PER CURIAM.
This is a petition for review of a recommendation by the Florida Board of Bar Examiners that L.M.S. not be admitted to The Florida Bar. We have jurisdiction pursuant to article V, section 15 of the Florida Constitution.
We approve L.M.S.’s petition for admission to the Bar because the events that led to an investigation of her character and fitness appear to be isolated and because she has already exhibited rehabilitation in the two years since those events.
During L.M.S.’s final semester of law school in the fall of 1991, she was enrolled in a supervised writing and research course that required completion of a paper. She originally planned to sit for the General Bar Examination in February 1992, but postponed that sitting because of financial considerations.
L.M.S. did not complete her paper until February 1992 and had not received a grade on the paper when she sat for the General Bar Examination in July 1992. The Board impounded her scores from that exam because L.M.S. could not show that she had completed her graduation requirements when she took the test.
L.M.S. admits that she made an error in judgment in sitting for the July 1992 examination. She maintained that she honestly believed she was eligible to take the exam *839 even though she had not received a grade for her paper and she had received two letters from her law school advising her that she might be ineligible to sit for the Bar exam because she had not completed her graduation requirements.
L.M.S. said she spoke with a dean at her school who advised her that she probably could take the Bar exam because she had received an admission ticket.[1] She said she thought she had fulfilled her graduation requirements simply by turning in her paper. She did not, however, investigate the status of her paper until the Board sent her a letter in the fall of 1992 advising her of an investigative hearing. L.M.S. eventually received a passing grade on her paper, and her degree was conferred in February 1993.
After the Board conducted an investigative hearing into this matter, its members decided specifications should be prepared concerning L.M.S.’s character and fitness. The Board held a formal hearing and found that two specifications were proven, but not disqualifying.[2] It found that five specifications were disqualifying because they demonstrated L.M.S.’s lack of honesty, truthfulness, and candor.[3] The Board also found that L.M.S.’s testimony was “unreasonable and unworthy of belief’ and recommended denying admission.
We find competent, substantial evidence in the record to support the Board’s factual findings. We have recognized that truthfulness and candor are critical for Bar applicants:
While there is no litmus test by which to determine whether an applicant for admission to the Bar possesses good moral character, we have said that no moral character qualification for Bar membership is more important than truthfulness and candor.
Florida Bd. of Bar Examiners re J.H.K., 581 So.2d 37, 39 (Fla.1991) (quoting In re Allan S., 282 Md. 683, 387 A.2d 271, 275 (1978)). Yet lack of candor does not automatically prevent admission. See In re VMF, 491 So.2d 1104, 1107 (Fla.1986) (granting admission to applicant who was not completely candid in Bar application about a drug arrest where applicant had no other transgressions and had led an exemplary life in the intervening ten years).
We disagree with the Board’s conclusion that L.M.S. should be denied admission to the Bar. The circumstances surrounding her erroneous sitting for the July 1992 Bar exam seem to be isolated. The record reflects that L.M.S. worked to support herself as an undergraduate student and during law school. Her employers consider her dependable and hardworking. Although L.M.S. had some financial difficulties after her father’s death, she took steps to consolidate her debts and has made regular monthly payments.
The Board points out that L.M.S. could reapply for admission, but, in light of L.M.S.’s overall record, it is not clear what further rehabilitation she could show. She acknowledges that she should have been more diligent in checking with her professor and school about the grade for her paper. She acknowledges her mistake in sitting for the July 1992 exam. Her scores were impounded because she cannot show that she had met her graduation requirements when she sat for the July 1992 Bar exam. There is no indication in the record that she has engaged in any behavior similar to that which led to her taking the July 1992 exam.
Accordingly, while we do not condone any of L.M.S.’s statements that were false, misleading, or lacking in candor, we find that *840 she should be admitted to the Bar once she passes both parts of the General Bar Examination.[4]
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.

. The dean testified that she does not recall meeting with L.M.S. about her eligibility to sit for the Bar exam, but she thought she spoke with L.M.S. by phone about the supervised research.

. The specifications concerned L.M.S.'s (1) application for admission to the February 1992 Bar exam and subsequent letter of postponement and (2) testimony that her professor was on sabbatical when she submitted her paper.

. These specifications concerned L.M.S.’s (1) application for admission to the July 1992 Bar exam; (2) statement on the application that she would not sit for the exam if she had not completed her graduation requirements; (3) response to the Board's letter seeking proof that she had completed her graduation requirements before she sat for the July 1992 exam; (4) testimony at the investigative hearing about whether she had been told she had not completed her graduation requirements; and (5) testimony about what a law school dean told her.

. The record reflects that L.M.S. has taken the Bar exam twice since her degree was conferred, but has not passed both parts of the exam.