PER CURIAM.
This is a petition for review of a recommendation by the Florida Board of Bar Examiners that J.C.B. not be admitted to The Florida Bar. We have jurisdiction pursuant to article V, section 15 of the Florida Constitution.
We deny J.C.B.’s petition because we find that he has not shown rehabilitation sufficient to warrant his admission.
J.C.B. was admitted to The Florida Bar in 1955. This Court disbarred him in 1986 for personal use of a client’s legal funds and neglect of a legal matter. He applied for readmission to the Bar in 1992. He has passed the Multistate Professional Responsibility Examination and both parts of the General Bar Examination.
Because of J.C.B.’s disciplinary history and information he provided on his Bar application, the Florida Board of Bar Examiners held an investigative hearing into his case in June 1993. Based on that hearing, the Board prepared specifications and held a formal hearing in May 1994. Finding the five specifications proven, the Board recommended that J.C.B. be denied admission to the Bar.
The first specification concerns J.C.B.’s disbarment. This Court disbarred J.C.B. *80 based on three instances in which he received money on behalf of a client, but failed to forward the money to the client. Also, in another case, J.C.B. neglected a legal matter for four years, then refused to turn over files when the client hired a new lawyer.
Specification 2(A) concerns J.C.B.’s arrest for second-degree grand theft in 1985 based on his failure to deliver funds to a client. The charges were dropped after J.C.B. transferred ownership of his Jaguar to the client, who then did not show up for trial. The Board found that the underlying misconduct of this specification and Specification 1 were disqualifying for admission.
Specification 2(B) concerns a contempt of court charge filed in 1973 and later dropped. J.C.B. said he thought the charge stemmed from his failure to appear in court on behalf of a client.
The third specification concerns financial irresponsibility to creditors. J.C.B. has outstanding judgments from the mid-1980s to accountants, a foundation, a bank, and a doctor, and Internal Revenue Service tax liens levied on bank accounts, including one for more than $27,000. J.C.B. admitted the specific allegations, but denied the general allegation that he lacked financial responsibility.
In evaluating J.C.B.’s financial responsibility, the Board considered that even though J.C.B. had no income from 1985 to 1986, he bought a new Mustang convertible when there were less expensive ears on the lot; J.C.B. has paid more recent obligations, but has left the mid-1980s judgments unsatisfied; and he works full-time for a lawyer for $150 a week when he testified that he could earn $40,000 a year as a law clerk.
The fourth specification concerns the suspension of J.C.B.’s driver’s license for failure to pay a speeding ticket. The Board found that J.C.B. had, at the very least, constructive notice of the suspension, but failed to report this on his Bar application.
Specification 5 concerns J.C.B.’s characterization in his Bar application of why he was disbarred:
During this time frame, through my carelessness and gross negligence [a client’s] money held in trust by me was used for matters unrelated to his case.
J.C.B. said at his investigative hearing that he made a mistake and negligently took the money, but he did not steal. The Board found that J.C.B.’s application and testimony at the investigative hearing were false, misleading, or lacking in candor. The referee in his Bar discipline case specifically found J.C.B. guilty of violating disciplinary rules involving dishonesty, fraud, deceit, or misrepresentation. J.C.B. also denied during his formal hearing that he intentionally stole from his clients. The Board said it was bound by the referee’s and this Court’s finding in 1986 that J.C.B. personally used a client’s funds.
The Board found that Specifications 2, 3, 4, and 5, when viewed collectively, were disqualifying for admission to the Bar.
The Board was concerned that five character witnesses who recommended J.C.B. for admission during the formal hearing did not know why he was disbarred. In addition, the Board did not find specific evidence of rehabilitation to overcome the seriousness of the proven specifications.[1]
Because of the seriousness of J.C.B.’s past misconduct, concerns about his apparent financial responsibility, his apparent unwillingness to accept full responsibility for conversion of clients’ funds to his own use, and insufficient evidence of rehabilitation, the Board recommended denying J.C.B. admission to the Bar.
In seeking readmission, J.C.B. bears the heavy burden of establishing rehabilitation. See Florida Bar re Janssen, 643 So.2d 1065, 1066 (Fla.1994); Florida Bar re John, 559 So.2d 1089, 1090 (Fla.1990). To determine whether J.C.B. should be readmitted, we may review the factual underpinnings *81 of the Board’s recommendation by conducting an independent review of the record. Florida Bd. of Bar Examiners re R.D.I., 581 So.2d 27, 29 (Fla.1991). Having done so, we agree with the Board that J.C.B. has not shown sufficient rehabilitation and should not be readmitted.
Against the weight of the record, J.C.B. continues to maintain that he was merely “grossly negligent” when he used client’s funds for his own use. J.C.B. argues that he is being penalized for consistently disagreeing with a legal holding. He says there is no competent, substantial evidence that he is unwilling or unable to acknowledge his prior wrongdoing and that he did not give testimony that was false, misleading, or lacking in candor in his sworn statement in his application and his sworn testimony at the investigative hearing. J.C.B. pleaded guilty to the charges before the referee, did not contest the sanction of disbarment, and has steadfastly maintained that he did not intend the ethical violations. But the referee and this Court have found J.C.B.’s behavior that led to his disbarment to be intentional and not the result of negligence.
We find J.C.B.’s case distinguishable from Florida Board of Bar Examiners re L.K.D., 397 So.2d 673 (Fla.1981). In L.K.D., the applicant maintained her innocence of a shoplifting charge. The Court found that her acquittal justified her maintaining innocence “even though the Board might have thought it advantageous to make a showing of repentance.” Id. at 676. In the instant ease, J.C.B. was sanctioned for intentional wrongdoing, yet he maintains that this wrongdoing was merely negligent.
In addition, J.C.B. has not attempted to repay longstanding debts. He contends that the Board found him financially irresponsible because he has not declared bankruptcy, even though this Court has denied admission to applicants who have declared bankruptcy to discharge their financial obligations.
First, the Board did not find J.C.B. financially irresponsible because he has not declared bankruptcy. The Board found him financially irresponsible because he failed to attempt to satisfy his outstanding debts, and he continued to work for $150 per week when he had other, higher-paying job opportunities.
Second, bankruptcy does not necessarily bar admission. In Florida Board of Bar Examiners re G.W.L., 364 So.2d 454 (Fla.1978), this Court refused to admit an applicant because he filed bankruptcy precipitously. The Court found no unusual misfortune or financial catastrophe, but determined that G.W.L. chose to file bankruptcy in an attempt to avoid routine debts such as student loans. This Court specifically held:
To foreclose any misconstruction of this decision, we must emphasize that this ruling should not be interpreted to approve any general pi’inciple concerning bankruptcies nor to hold that the securing of a discharge in bankruptcy is an act inherently requiring the denial of admission to the bar. We further do not wish this decision to be construed to hold that any comparable exercise of a clear legal right will necessarily imperil bar admission.
Id. at 460. The Court subsequently directed the admission of another applicant who had declared bankruptcy. Florida Bd. of Bar Examiners re Groot, 365 So.2d 164 (Fla. 1978). The Court found that Groot’s declaration of bankruptcy was justified: He was the father and custodian of two children from a recently terminated marriage; his expenses included some of those of his former wife; and he exhausted his personal resources and received loans from family members until he found a job. Id. at 168.
In two other specifications, J.C.B. focuses on discrepancies in the Board’s findings and conclusions of law. In doing so, he misses the forest for the trees. Whether J.C.B.’s driver’s license was suspended on February 28, 1991 (the Board’s position), or April 4, 1991 (J.C.B.’s position), the fact remains that J.C.B.’s license was suspended well before he filed his Bar application in June 1992. And whether his contempt charge was a felony, a misdemeanor, or a crime at all is not relevant to the issue that the charge was brought — and later dropped — for his failure to appear in court on behalf of a client.
*82 Also critical to our decision is J.C.B.’s failure to show sufficient rehabilitation. An applicant such as J.C.B. who affirmatively asserts rehabilitation from prior conduct bearing adversely on character and fitness for admission must show rehabilitation by
such things as a person’s occupation, religion, community or civic service. Merely showing that an individual is now living as and doing those things he or she should have done throughout life, although necessary to prove rehabilitation, does not prove that the individual has undertaken a useful and constructive place in society. The requirement of positive action is appropriate for applicants for admission to the bar because service to one’s community is an implied obligation of members of the bar.
Fla.Bar Admiss.R., art. Ill, § 4.e.(7). Before his disbarment, J.C.B. served in the military, performed pro bono legal work, coached Little League sports, and was involved in Cub Scouts. Our focus, however, is on his activities since his disbarment. Although J.C.B. has held a job and attended church, he has not demonstrated the community involvement that article III, section 4.e.(7) requires. J.C.B. testified that he is too old for some community activities, apparently referring to the military, Little League sports, and Cub Scouts. Even if that is true, there are other types of community activities in which J.C.B.' could become involved. J.C.B.’s promise to perform pro bono work if readmitted is not enough to show rehabilitation now. In addition, we share the Board’s concern that most of J.C.B.’s character witnesses did not know why he was disbarred.
The misconduct for which J.C.B. was disbarred is serious, but does not, as J.C.B. contends, erect a permanent bar to readmission. Upon a showing of rehabilitation, J.C.B. may reapply for admission after two years from the date of the Board’s adverse recommendation. See Florida Bd. of Bar Examiners re C.W.G., 617 So.2d 303, 305 (Fla.1993).
Accordingly, we deny readmission to J.C.B. at this time.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.

. Article III, section 4.e. of the Rules Relating to Admissions to the Bar requires an applicant such as J.C.B. to show by clear and convincing evidence rehabilitation including occupation, religion, community, or civic service. J.C.B. testified that he was too old to participate in some types of community service and that he was too busy working.