PER CURIAM.
L.H.H. petitions this Court for review of the Florida Board of Bar Examiners’ recommendation that he not be admitted to The Florida Bar. We have jurisdiction pursuant to article V, section 15 of the Florida Constitution.
We deny L.H.H.’s petition because we find that he has not shown rehabilitation sufficient to warrant Ms admission. See Fla.Bar.Admiss.R., art. Ill, § 4.e. (requiring clear and convincmg evidence of rehabilitation for applicants such as L.H.H.).
L.H.H. was admitted to the Alabama Bar m 1967 and to The Florida Bar in 1968. He was permanently disbarred from The Florida Bar in 1984 after he pleaded guilty to one count of conspiracy to traffic in stolen jewelry and two counts of grand theft. He also resigned from the Alabama Bar.
In 1992, tMs Court allowed L.H.H. to seek readmission to The Florida Bar. He filed applications for admission and has passed the Florida bar and Multistate Professional Responsibility examinations.
Because of L.H.H.’s disbarment and information he provided on Ms Bar application, the Florida Board of Bar Examiners held an investigative hearing in 1993. Based on that hearing, the Board prepared specifications and held a formal hearing in October 1994. The Board found six of the seven specifications proven and recommended that L.H.H. be demed admission to The Florida Bar.
The first proven specification concerns the crimes to wMch L.H.H. pleaded guilty. L.H.H. accepted a ring as security for his fee in a criminal appeal, even though his client told him the ring was stolen. The client repeatedly asked L.H.H. if he knew anyone who wanted to buy stolen jewelry from him. Eventually, L.H.H. bought a one-carat diamond from the client. After L.H.H.’s arrest and guilty plea, the trial court withheld adjudication of guilt for one count of conspiracy to traffic in stolen jewelry and two counts of grand theft. The court sentenced L.H.H. to five years’ probation. The judge terminated probation after 2½ years.
The second proven specification concerns L.H.H.’s disbarment in Florida because of his arrest and for statements made during the events that led to Ms arrest and conviction. These statements included “puffing” and claims of outrageous coaching of witnesses. This Court demed L.H.H.’s petition for leave to seek readmission to the Bar in 1991, but granted the petition m 1992. L.H.H. also surrendered Ms license to practice law in Alabama, and that bar demed Ms petition for reinstatement in 1990. The Alabama order provides that if L.H.H. is reinstated m Florida, he will automatically be reinstated in Alabama.
The third proven specification concerns L.H.H.’s disciplinary Mstory in Florida. He received a private reprimand in 1979 after he refused to stop work on a case, as the client requested, until he received $142.50 in additional attorney’s fees owed. L.H.H. was publicly reprimanded for refusmg to refund $2134 in unearned attorney’s fees. He also was publicly reprimanded for improperly receipting a client’s property or money into his trust account.
The fourth proven specification concerns L.H.H.’s failure to note on Ms 1992 application for admission to The Florida Bar that he had petitioned for and been demed reinstatement to the Alabama Bar.[1] In Ms sworn answer to the specifications, L.H.H. admitted the factual allegations, but demed that Ms response was knowingly false, lacking in candor, or designed to mislead the Board. He *1048 claimed that his petition for reinstatement was not an “application” as contemplated by the question on his Florida Bar application. He also argued that the Board would have access to his Alabama bar file because he had told the Board about his admission and resignation there. The Board determined that L.H.H. should have revealed his petition for reinstatement and found it “unreasonable” that someone of L.H.H.’s age and legal experience “could in good faith make the semantical argument concerning the term ‘application’ or merely assume that the Board would have his ‘entire’ Alabama file.”
The fifth proven specification concerns L.H.H.’s arrest in 1986 for DUI and his participation in an alcohol recovery program beginning in 1994. L.H.H. pleaded nolo con-tendere to DUI, was adjudicated guilty, and placed on six months’ probation. In his answer to specifications, L.H.H. said he had been sober since January 1, 1994, but testified at his formal hearing that he had been sober only since April 1994 — after he was evaluated for alcohol dependence at the Board’s request. Although L.H.H. has participated in a recovery program, the Board found that the period of involvement was insufficient and that L.H.H.’s motive for participating was questionable.
The sixth proven specification concerns L.H.H.’s intent to mislead authorities about his 1984 convictions when he applied for a real estate broker’s license in Alabama in 1987.
The Board found that the second proven specification was individually disqualifying and that the other proven specifications were collectively disqualifying.
L.H.H. argues that the Board has erected a permanent barrier to his readmission by finding that his disbarment alone is disqualifying. Article III, section 2.c. of the Rules Relating to Admission to The Florida Bar requires the Board to evaluate factors — including age, recency of conduct, evidence of rehabilitation, candor in the admissions process — to determine whether an applicant has the character and fitness required to return to the practice of law. The Board found that L.H.H. was more than forty years old when most of the proven specifications occurred and had been a Florida Bar member for at least ten years. The proven misconduct occurred within the last fifteen years, with lack of candor on the application occurring as recently as 1992.
An applicant such as L.H.H. bears the heavy burden of establishing rehabilitation. Florida Bd. of Bar Examiners re J.C.B., 655 So.2d 79 (Fla.1995). Thus, L.H.H.’s disbarment alone is disqualifying unless he can show clear and convincing evidence of rehabilitation.[2] L.H.H. argues that the Board overlooked such evidence.
The focus at the formal hearing was rehabilitation and whether L.H.H. had demonstrated fitness for membership in The Florida Bar. L.H.H. presented depositions of three character witnesses and live testimony of four character witnesses who knew L.H.H. either socially, professionally, or through alcohol recovery programs. All recommended L.H.H.’s readmission.
L.H.H. testified that he has shown rehabilitation through work in hunting and gun safety and in environmental conservation. The Board discounted this testimony, however, because L.H.H. did not offer independent testimony, documentation, or corroboration to verify his claims or to explain the extent of his work.
L.H.H. argues that his ease is analogous to Florida Board of Bar Examiners re L.M.S., 647 So.2d 838 (Fla.1994), where this Court ordered the admission of an applicant — once she passed both parts of the bar exam — who *1049 sat for the bar exam before she had completed her graduation requirements. In L.M.S., the Court found this to be an isolated event and “in light of L.M.S.’s overall record, it is not clear what further rehabilitation she could show.” Id. at 839.
We find L.ELH.’s case distinguishable. The specifications show not an isolated incident, but several instances of misconduct during his membership in The Florida Bar. These include disbarment, a private reprimand, two public reprimands, and arrests. L.M.S. had not engaged in any misconduct other than the isolated circumstances that concerned her taking the Bar exam.
Further, it is not clear that L.H.H. has shown sufficient rehabilitation. We share the Board’s concern that (1) L.H.H.’s attempt to address his alcohol dependency occurred only six months before his formal hearing and (2) his evidence of rehabilitation since his 1984 disbarment is not clear and convincing.
First, L.H.H. admits that he has a problem with alcohol dependence, yet he apparently did not address the problem until he was evaluated, at the Board’s request, by a doctor in April 1994. Since then, he has attended as many as six or seven Alcoholics Anonymous meetings a week. While this is commendable, we cannot help but note that L.H.H. was arrested for DUI in 1986 and did not seek help for alcohol dependence at that time. The Board’s concern that L.H.H. has been participating in a recovery program for only a short period of time is legitimate.
Second, the rehabilitation requirement is stringent. “Merely showing that an individual is now living as and doing those things he or she should have done throughout life, although necessary to prove rehabilitation, does not prove that the individual has undertaken a useful and constructive place in society.” Fla.Bar Admiss.R., art. III, § 4.e.(7).[3] Although L.H.H. has taken steps toward rehabilitation, he does not present this Court with evidence of the extra effort applicants must make to demonstrate sufficient rehabilitation.
For example, L.H.H. says he has participated in hunting safety programs, but has not provided the Board with specific evidence of his participation since his disbarment. Thus, while L.H.H. appears to be “living as and doing those things he or she should have done throughout life,” we cannot fairly determine whether L.H.H. has taken positive steps showing rehabilitation as contemplated in article III, section 4.e.(7).
At this time, L.H.H. has not shown clear and convincing evidence of rehabilitation. He may reapply for admission after two years from the date of the Board’s adverse recommendation. See Florida Bd. of Bar Examiners re C.W.G., 617 So.2d 303, 305 (Fla.1993).
Accordingly, we deny L.H.H. readmission at this time.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.

. This specification included two subparts where the Board found the facts proven, but not allegations that L.H.H. intentionally tried to mislead Ae Bar. We do not consider these two subparts in determining whether L.H.H. should be admitted to The Florida Bar.

. An applicant such as L.H.H. who affirmatively asserts rehabilitation from prior conduct bearing adversely on character and fitness for admission must show clear and convincing evidence of rehabilitation by
such things as a person's occupation, religion, community or civic service. Merely showing that an individual is now living as and doing those things he or she should have done throughout life, although necessary to prove rehabilitation, does not prove that the individual has undertaken a useful and constructive place in society. The requirement of positive action is appropriate for applicants for admission to the bar because service to one’s community is an implied obligation of members of the bar.
Fla.Bar Admiss.R., art. III, § 4.e.(7).

. The other elements to be considered in determining rehabilitation are (1) strict compliance with conditions of any disciplinary, judicial, administrative or other order, where applicable; (2) unimpeachable character and moral standing in the community; (3) good reputation for professional ability, where applicable; (4) lack of malice and ill feeling toward those who brought about the disciplinary, judicial, administrative, or other proceeding; (5) personal assurances, supported by corroborative evidence, of a desire and intention to conduct one's self in an exemplary fashion in the future, where applicable; and (6) restitution of funds or property, where applicable. Fla.Bar Admiss.R., art. III, § 4.e.