PER CURIAM.
P.T.R. asks this Court to review the Florida Board of Bar Examiners’ recommendation that he be denied admission to The Florida Bar. We have jurisdiction based on article V, section 15 of the Florida Constitution.
We disagree with the Board’s recommendation and order P.T.R.’s readmission to the Bar. Since P.T.R.’s disbarment, he has shown the rehabilitation required to merit his readmission. See Fla. Bar Admiss. R., art. Ill, § 4.e.
P.T.R. graduated from law school in 1975 and was admitted to the Bar later that year. He voluntarily withdrew from the practice of law in 1986, and was disbarred in 1988 retroactive to the date of his withdrawal.
P.T.R. applied for readmission to the Bar in 1992 and has passed both the General and Multistate Professional Responsibility examinations. Based on P.T.R.’s bar application and on information discovered during the Board’s background investigation, the Board held an investigative hearing. The Board then prepared specifications and held a formal hearing.
The Board found that two specifications were proven and disqualifying for admission to the Bar.[1]
The first specification concerns P.T.R.’s actions after he was appointed as the successor representative to an estate in which the decedent had no heirs. An attorney at P.T.R.’s firm suggested using a fictitious heir to prevent the estate from escheating to the state.
In 1980, P.T.R. filed papers identifying an heir, knowing that the information was false. He later filed papers stating that the proceeds from the estate had been distributed to the person identified as the heir. In fact, P.T.R. removed $7,082.71 from the estate account and split the money with the attorney who had suggested using a fictitious heir.
*336 In 1985, P.T.R. was charged with third-degree grand theft in connection with those events. He entered a plea of nolo contende-re in 1986. The court withheld adjudication and put P.T.R. on probation for five years. P.T.R.’s probation was terminated early by court order in 1990. P.T.R. admitted this specification.
The second specification concerns P.T.R.’s disbarment based on the felony described in the first specification. P.T.R. also admitted this specification.
The Board found that both of these specifications were proven and disqualifying for admission to the Bar.
At his formal hearing, P.T.R. presented depositions of six witnesses, affidavits of four people, and live testimony from three witnesses. The witnesses included his ex-wife, to whom he was married when the grand theft occurred. These witnesses and affiants all recommended P.T.R. for readmission.
The Board recommended that P.T.R. be denied admission based on the proven specifications and on P.T.R.’s failure to show clear and convincing evidence of rehabilitation. The formal hearing transcript shows that P.T.R. offered as evidence of rehabilitation his volunteer work for a homeowners’ association in North Carolina, where he and his current wife own a lot; donating blood (P.T.R. has a rare blood type); participating as a treasurer, coach, or umpire for his son’s Little League team; traveling with his daughter to swim meets when she was younger; and teaching martial arts to children for free.
The Board found this evidence insufficient in light of the seriousness of P.T.R.’s misconduct and the fact that P.T.R. did not reveal the misconduct until he was caught in 1985. The Board recommended that P.T.R. not be admitted to the Bar.
P.T.R. has petitioned this Court for review of the Board’s recommendation.
The misconduct that resulted in P.T.R.’s disbarment was extremely serious, P.T.R. did not come forward about his misconduct when it occurred in 1980. However, once state investigators discovered the wrongdoing, he took full responsibility for his actions. P.T.R. has been sanctioned criminally with probation and administratively with disbarment.
An applicant who has been disbarred bears a heavy burden of establishing rehabilitation. Florida Bd. of Bar Examiners re J.C.B., 655 So.2d 79, 82 (Fla.1995); Florida Bd. of Bar Examiners re W.H.V.D., 653 So.2d 386, 388 (Fla.1995). Article III, section 4.e. of the Rules Relating to Admissions to the Bar requires an applicant such as P.T.R. to show rehabilitation by criteria including:
(1) Strict compliance with the specific conditions of any disciplinary, judicial, administrative or other order, where applicable;
(2) Unimpeachable character and moral standing in the community;
(3) Good reputation for professional ability, where applicable;
(4) Lack of mali.ce and ill feeling toward those who by duty were compelled to bring about the disciplinary, judicial, administrative or other proceeding;
(5) Personal assurances, supported by corroborating evidence, of a desire and intention to conduct one’s self in an exemplary fashion in the future;
(6) Restitution of funds or property, where applicable;
(7) Positive action showing rehabilitation by such things as a person’s occupation, religion, community or civic service. Merely showing that an individual is now living as and doing those things he or she should have done throughout life, although necessary to prove rehabilitation, does not prove that the individual has undertaken a useful and constructive place in society. The requirement of positive action is appropriate for applicants for admission to the bar because service to one’s community is an implied obligation of members of the bar.
P-T-R- that he has fulfilled the requirements of article III, section 4.e.:
(1) He voluntarily shut down his law practice before he was disbarred, and there are no allegations of unlicensed practice of law or *337 violations of the Bar’s restrictions on clerking by disbarred lawyers.
(2) He has rehabilitated his good name in the community. He presented testimony, depositions, or affidavits from lawyers and lay people who have confidence in his ability.
(3) His professional ability was not at issue. He has taken and passed the bar exam since his disbarment, thus assuring the Court of his competence to practice law.
(4) P.T.R. does not express any malice or ill feeling toward the State Attorney’s office or the Bar. In fact, he testified that he thinks highly of the state attorney’s investigator. He recognizes that disciplinary proceedings against him were appropriate. Although he would rather have been suspended for three years than disbarred, he bears no animosity toward anyone over his disbarment.
(5) P.T.R. and his supporting witnesses testified to P.T.R.’s desire to conduct himself in an exemplary fashion. He regrets his misconduct and takes full responsibility for it. He has undergone counseling, developed a friendly relationship with his ex-wife, remarried, and developed other interests besides the law. There has been no misconduct since the 1980 incident. P.T.R.’s witnesses testified that they were familiar with the specifications filed against him. They testified as to P.T.R.’s desire to lead an exemplary life and as to the positive changes he has made in his life since his disbarment.
(6) P.T.R. has made restitution of the funds from the estate, including the share given to the other attorney in his firm.
(7) He has served his community as a volunteer martial arts instructor; volunteered by serving as treasurer, umpire, or coach for his son’s Little League team; and offered his services to a homeowners’ association in North Carolina, where he and his wife own a lot. In addition, P.T.R. has a rare blood type, and he donates blood about every sixty days. During his disbarment, he has worked for a law firm. He does research and drafts documents, but does not have any client contact.
P.T.R. maintains that his ease is analogous to Florida Board of Bar Examiners re L.M.S., 647 So.2d 838 (Fla.1994), where this Court ordered the admission of an applicant once she passed the bar exam. L.M.S. engaged in misconduct by sitting for the bar exam before she was eligible. The Court determined that L.M.S.’s misconduct was an isolated event and, in light of her overall record, said, “[I]t is not clear what further rehabilitation she could show.” Id. at 839. Based on his record, P.T.R. does not know what further rehabilitation he could show.
The Board argues that P.T.R. has not met the heavy burden of showing rehabilitation. While the Board does not appear to dispute that P.T.R. has fulfilled the requirements of article III, section 4.e.(l)-(6), it maintains that the record shows he has not met the positive action requirement of section 4.e.(7).
Except for the regular donation of blood, the Board argues that P.T.R.’s acts have benefited himself, his family, and his property. It does not suggest that the activities in which P.T.R. engaged were unsatisfactory. The Board suggests that P.T.R. could best serve the community by assisting the homeless, sick, or abused, or by working as a guardian ad litem.
We recognize that it is difficult to determine whether or when a person guilty of committing offenses as serious as P.T.R.’s has been rehabilitated. Certainly, without significant rehabilitation being shown, specifications one and two would be disqualifying.
While not a perfect determinant, § 4.e.(l)-(7) establishes a fair method of determining rehabilitation. P.T.R.’s compliance with paragraphs (1) through (6) is not an issue. Inasmuch as the Board does not contest the “positive actions” suggested by P.T.R. except that they benefit him, it would appear that the Court is called upon to determine whether otherwise acceptable “positive actions” became unacceptable because there was a benefit to P.T.R.[2] We do not read the rule to *338 preclude otherwise acceptable positive actions simply because there is a benefit to the applicant. Like the Board, we would encourage positive actions such as assisting the homeless, sick, or abused, or working as a guardian ad litem. Yet we find that the failure to perform those actions instead of the actions P.T.R. undertook was not per se failure to meet the heavy burden of rehabilitation established in the rule.
The fact that a particular type of service benefits both the community and the applicant does not necessarily lessen the value of the service. The rehabilitation requirement is broad in scope: we are directed to look to “such things as a person’s occupation, religion, [and] community or civic service” to make our determination. Fla. Bar Admiss. R., art. Ill, § 4.e(7). Here, we find that the activities P.T.R. selected positively impacted these areas of his life.
In addition to the substantial showing of rehabilitation P.T.R. has offered in proof of paragraphs (1) through (6), we note that the record shows both that P.T.R.’s misconduct was a single incident and that he has not engaged in any misconduct since this incident occurred fifteen years ago. While this alone is not dispositive of whether P.T.R. should be readmitted, it is a significant factor for this Court to consider. See Florida Bd. of Bar Examiners re J.A.S., 658 So.2d 515 (Fla.1995) (noting that none of applicant’s incidents of misconduct were recent). In conclusion, together with other significant evidence of rehabilitation, P.T.R. has demonstrated that he has achieved the kind of rehabilitation called for in the rule. Accordingly, we order his readmission to the Bar.
It is so ordered.
OVERTON, SHAW, KOGAN, HARDING and ANSTEAD, JJ., concur.
WELLS, J., dissents with an opinion, in which GRIMES, C.J., concurs.

. There were six specifications filed against P.T.R. The Board found that two were proven and disqualifying; one was proven and not disqualifying; and three were not proven.

. We do not find merit in P.T.R.’s suggestion that travelling with his daughter to swim meets constitutes a "positive action” tending to show rehabilitation. We consider only the other activities engaged in by P.T.R.