PER CURIAM.
Petitioner J.J.T., a disbarred attorney, asks this Court to review the recommendation of the Florida Board of Bar Examiners that he not be readmitted to The Florida Bar. We have jurisdiction. See Art. V, § 15, Fla. Const. We affirm the Board’s recommendation and deny J.J.T. readmission to the bar at this time.
In 1992, J.J.T. was disbarred after pleading guilty to charges of unlawful compensation and perjury in an official proceeding. The charges stemmed from J.J.T.’s request for and acceptance of $2500 from a client J.J.T. represented as a special public defender and from his denial of wrongdoing when questioned under oath by law enforcement officials. In 1997, J.J.T. filed an application seeking readmission to The Florida Bar. Following an investigative hearing, the Board served formal specifications against him. The specifications were based solely on his pri- or discipline[1] and disbarment. J.J.T. has admitted all of the allegations contained in the specifications, reducing the issues in this case to an analysis of his asserted rehabilitation.
During the formal hearing on rehabilitation, J.J.T. testified on his own behalf, called two character witnesses, and offered fifteen exhibits consisting of documents related to his divorce, literature regarding a nonprofit corporation for which he had been working, and character letters and affidavits. Essentially, the Board found that J.J.T. had not presented clear and convincing evidence of several elements of rehabilitation as set forth in Rule 3-13 of the Rules of the Supreme Court Relating to Admissions to the Bar. Specifically, the Board found that he had not met the “positive action” requirement of rehabilitation[2] and had not sufficiently proven his desire and intent to conduct himself in an exemplary fashion in the future.[3] Accordingly, *1096 the Board recommended that J.J.T. not be readmitted to The Florida Bar at this time.
We agree with the Board that J.J.T. has not shown he is presently qualified for readmission to The Florida Bar. As this Court has observed, “disbarment alone is disqualifying unless [the applicant] can show clear and convincing evidence of rehabilitation,” Florida Bd. of Bar Exam’rs re L.H.H., 660 So.2d 1046, 1048 (Fla.1995), and disbarred attorneys should be readmitted only if they can meet this “heavy burden.” Florida Bd. of Bar Exam’rs re J.C.B., 655 So.2d 79, 80 (Fla.1995). Additionally, in evaluating an applicant’s showing of rehabilitation, the nature of the past misconduct cannot be disregarded. See Florida Bd. of Bar Exam’rs re W.H.V.D., 653 So.2d 386, 388 (Fla.1995). The more serious the misconduct, the greater the showing of rehabilitation that will be required.
Here, J.J.T.’s misconduct was extremely serious. J.J.T. was publicly reprimanded in 1988 by the then-president of The Florida Bar for serious client neglect. The president admonished him that he must never again conduct himself in such a manner; however, the record demonstrates that J.J.T. disregarded this admonishment and proceeded to engage in criminal conduct consisting of unlawful compensation and lying under oath, which resulted in his disbarment. This type of conduct is extremely damaging to the legal profession and process, and unlawful compensation is akin to bribery. Indeed, J.J.T. agreed at his formal hearing, after pointed questioning, that the import of his solicitation of $2500 from his court-assigned client was that his client would be sentenced to probation in exchange for the cash payment.
Recognizing the serious nature of the misconduct for which J.J.T. was disbarred, we agree with the Board that J.J.T. has not shown sufficient “positive action” to establish his rehabilitation. As to this element, J.J.T. was required to show rehabilitation by such things as his “occupation, religion, community or civic service. Merely showing that [he] is now living and doing those things that he ... should have done throughout life, although necessary to prove rehabilitation, does not prove that [he] has undertaken a useful and constructive place in society.” Fla. Bar Admiss. R. 3 — 13(g). This requirement is a stringent one, and the burden was on J.J.T. to present evidence of the “extra effort” required to show rehabilitation. See Florida Bd. of Bar Exam’rs re L.H.H., 660 So.2d 1046, 1049 (Fla.1995).
Here, the record shows that J.J.T. has done volunteer work a nonprofit corporation, A Child Is Missing. This corporation assists law enforcement agencies in locating missing children through a computerized telephone dialing and messaging system. The executive director of the corporation testified that J.J.T.’s involvement increased from several times a week in the beginning to several hours each weekday in the six to eight months preceding the formal rehabilitation hearing. The executive director also testified regarding the possibility that J.J.T. may eventually be employed by the corporation on a paid full-time basis. J.J.T. admits that this possibility is part of his motivation for volunteering and that his “ambition would be to develop A Child is Missing to the point where [he] would be able to have a salary from them, and maybe some day act as a legal counsel in addition to doing whatever else is required.” Additionally, J.J.T. has done volunteer work for a church on three or four occasions during the last three years and volunteered on three occasions to counsel victims of AIDS.
Very recently, in Florida Board of Bar Examiners re M.L.B., No. SC95639, 2000 WL 373764, *4, — So.2d -, - (Fla. April 13, 2000), this Court addressed the “positive action” element of rehabilitation and stated:
The rules contemplate and we wish to encourage positive actions beyond those *1097 one would normally do for self benefit, including, but certainly not limited to, working as a guardian ad litem, volunteering on a regular basis with shelters for the homeless or victims of domestic violence, or maintaining substantial involvement in other charitable, community, or educational organizations whose value system, overall mission, and activities are directed to good deeds and humanitarian concerns impacting a broad base of citizens.
J.J.T. was disbarred in 1992. In the six years prior to his rehabilitation hearing, aside from his work with A Child is Missing, he can show only a handful of instances of volunteer community service. Further, while J.J.T.’s work for A Child Is Missing is commendable and appears to be the type of activity encouraged in M.L.B., his most active participation did not occur until shortly before the rehabilitation hearing, and its value as evidence of rehabilitation is diminished by the fact that his admitted ultimate goal is paid full-time employment for himself.
We also agree with the Board’s determination that J.J.T. did not provide clear and convincing evidence of his desire and intent to conduct himself in an exemplary fashion in the future. The Board based this determination on two main factors. First, the Board correctly discounted the weight given to much of his “corroborating evidence” on this element-character letters and affidavits. J.J.T. does not dispute that many of his character letters and affidavits were submitted by persons who did not know why he was disbarred. “It is important for those attesting to an applicant’s moral character to be aware of his or her past misconduct, and recommendations from those who are unaware of it may be given less weight.” M.L.B., 2000 WL 373764, at *2, — So.2d at -; see also Florida Bd. of Bar Exam’rs re J.C.B., 655 So.2d 79, 82 (Fla.1995)(noting concern that “most of [the applicant’s] character witnesses did not know why he was disbarred”). Further, while the signatories presumably read and agreed with the content, the fact that J.J.T. prepared and managed the content of many of the letters and affidavits himself also diminishes their value as corroborating evidence.
Second, the Board found that J.J.T.’s own testimony at the formal hearing “displayed either a lack of candor or an inability to fully accept and appreciate the serious nature of his past misconduct;” thus, it found his assurances of good behavior in the future “unconvincing.” This is essentially an assessment of the credibility of J.J.T.’s testimony. Accordingly, we defer to the Board’s judgment in this regard. Cf. Florida Bd. of Bar Exam’rs re G.J.G., 709 So.2d 1377, 1379-80 (Fla.1998)(defer-ring to Board’s findings based upon credibility of witnesses).
Based on the foregoing, we affirm the Board’s finding that J.J.T. has not established rehabilitation along with its recommendation that he not be readmitted to The Florida Bar at this time.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.

.J.J.T. received a private reprimand in 1984 for an improper advance to a client or a friend of a client, and he received a public reprimand in 1988 for (1) failing to appear at a hearing on a motion for summary judgment on behalf of a client, failing to inform the client of the resulting order of summary judgment against the client, and failing to move to set aside the order; and (2) failing to prepare for and attend a sentencing hearing on behalf of a client because he felt the client was not abiding by the fee agreement and filing a motion to withdraw without notifying his client. In addition to the public reprimand, J.J.T. was placed on probation and was required to meet monthly with a supervising attorney and pass an ethics course at an ABA-approved law school.

. Fla. Bar Admiss. R. 3-13(g).

. Fla. Bar Admiss. R. 3-13(e).'