709 So.2d 1377 (1998)
FLORIDA BOARD OF BAR EXAMINERS RE G.J.G.
No. 91134.
Supreme Court of Florida.
May 7, 1998.
*1378 Leighton D. Yates, Jr., Chair, Florida Board of Bar Examiners, Kathryn E. Ressel, Executive Director, and Robert G. Blythe, Assistant General Counsel, Tallahassee, for Petitioner.
Robert A. McNeely of McFarlain, Wiley, Cassedy & Jones, P.A., Tallahassee, for Respondent.
PER CURIAM.
Petitioner G.J.G. asks this Court to review the recommendations of the Florida Board of Bar Examiners (Board). We have jurisdiction. Art. V, § 15, Fla. Const.
G.J.G. executed his original application for admission to The Florida Bar on December 30,1987, and sat for the Florida Bar Exam in July 1988. G.J.G. passed the bar exam; however, due to allegations of cheating, his scores were impounded. In November of 1988, G.J.G. appeared before the Board for an investigative hearing at which he denied cheating. The Board served Specifications on G.J.G. in May of 1989, and he answered, but no formal hearing was scheduled. Subsequently, in June of 1992, G.J.G. requested a formal hearing on the Specifications. However, the Board informed G.J.G. that his original application for admission had become obsolete. He filed an updated bar application on November 24, 1994.
In January of 1996, G.J.G. again appeared before the Board for an investigative hearing, subsequent to which the Board filed a set of supplemental Specifications against him. In total, the Board filed nine original and supplemental Specifications against G.J.G. Specification 1 charged that G.J.G. cheated on the July 1988 Multistate Bar Examination. Specification 2 related to alleged false statements made by G.J.G. in support of a claim for unemployment benefits in another state while attending law school in Florida. Specification 3 charged that (A) G.J.G. falsely denied cheating on the bar exam, and (B) lied about his visual acuity during the first investigative hearing in 1988. Specification 4 related to alleged false statements on an amendment to G.J.G.'s bar application regarding an insurance surcharge that resulted in the suspension of his driving privileges in another state. Specification 5 charged that, in 1991, G.J.G. assaulted an individual with a gun and damaged the individual's truck; that G.J.G. was arrested and charged with aggravated assault; and that he asked the alleged victim to drop the charges and paid him $500, after which the charges were dropped. Specification 6 related to alleged false statements on G.J.G.'s bar application, on an amendment to his bar application, *1379 and at the second investigative hearing regarding the alleged incident of aggravated assault. Specification 7 related to alleged false statements made by G.J.G. at the second investigative hearing regarding his reasons for not pursuing his application after the first set of Specifications was filed. Specification 8 charged that G.J.G. made false statements on a Florida Residential Property and Casualty Joint Underwriting Association Homeowners Application. Specification 9 charged that G.J.G. had been financially irresponsible with regard to certain student loans and consumer credit accounts, and had invested money in a house and other items instead of paying these debts.
Following the formal hearing, the Board concluded that only specifications 1, 2, 3(A) and (B), 5,[1] 6, 7, and 8 had been proven. Specifications 1, 3(A), 5, and 6 were found to be individually disqualifying, and 3(B) was found to be disqualifying when viewed collectively with the other specifications. Specifications 2, 7, and 8 were found not to be disqualifying in light of G.J.G.'s explanations. G.J.G. presented one live character witness and several letters in support of his character and fitness; however, the Board concluded that these did not mitigate the seriousness of the proven disqualifying specifications, which covered conduct spanning from July 1988 through January 1996. The Board recognized that the cheating incident had occurred approximately nine years before, but noted that the delay in adjudicating that particular incident was due to G.J.G.'s failure to pursue his application and that there had been further disqualifying conduct in later years. Accordingly, the Board recommended that G.J.G. not be admitted to The Florida Bar. G.J.G. challenges the Board's findings as to Specifications 1, 3(A), 5, and 6 and seeks review of the Board's recommendation.
Upon review, we find that Specification 1, charging that G.J.G. cheated on the July 1988 Multistate Bar Examination, was proven by competent substantial evidence. At the formal hearing, an attorney proctor at the July 1988 bar exam testified as to G.J.G.'s behavior during the exam. The proctor testified that during the afternoon session of the exam, he saw G.J.G. looking back and forth between his answer sheet and the answer sheet of the applicant sitting at the table ahead of him and to his left. He also testified that G.J.G. appeared to have moved his chair six to eight inches toward the center of the tablecloser to the answer sheet of the suspected source. Other proctors and staff also observed G.J.G.'s conduct.
The Board also heard the testimony of Dr. Stephen Klein. By comparing the answers of all Florida applicants who took the July 1988 Multistate Exam and achieved scores similar to G.J.G. and the suspected source, he determined that the degree of agreement between G.J.G.'s responses and the suspected source's responses was well outside of the degree which would be expected to occur by chance.[2] He also rejected as alternative explanations for the high degree of agreement the possibility that G.J.G. and the suspected source shared the same guessing rule, shared subject- matter expertise, or shared a misreading of fact patterns applying to a cluster of questions.
Dr. Klein also considered that, of fifteen erasures on G.J.G.'s answer sheet, fourteen were to change an answer to that given by the suspected source. Dr. Klein also testified that the physical positions of G.J.G. and the suspected source and G.J.G.'s performance on the multiple choice part of the exam as compared to his performance on the essay portion were also factors which led him to conclude that G.J.G. had copied from the suspected source. In light of this evidence, we uphold the Board's finding.
Additionally, we uphold the Board's findings that, as charged in Specification 5, G.J.G. committed aggravated assault in 1991, damaged the victim's truck, and paid him in exchange for having the assault charges dropped. As to this incident, the Board heard testimony from the victim and G.J.G. The Board had the opportunity to observe *1380 this testimony first hand and to evaluate the credibility of these witnesses. Because the determination of these facts depends upon an assessment of the credibility of the witnesses, we defer to the Board's finding. See Florida Bd. of Bar Exam'rs re M.R.I., 623 So.2d 1178, 1180 (Fla.1993) (upholding finding as supported by competent substantial evidence where issue turned on credibility of witnesses); Florida Bar v. Lecznar, 690 So.2d 1284 (Fla.1997) (holding, in context of bar discipline proceeding, that because referee, as finder of fact, is in position to evaluate testimony firsthand, findings will be upheld as long as supported by competent substantial evidence).
We refuse, however, to uphold as individually disqualifying the Board's separate finding, as charged in Specification 3(A), that G.J.G. falsely denied cheating on the bar exam during the first investigative hearing. The Board is certainly justified in requiring absolute candor from applicants for admission and in considering a lack of candor when making its recommendation. However, a charge and finding that an applicant falsely denied an act which, at the time of the charge, had not yet been proven, puts the applicant between the proverbial "rock and a hard place," with a choice either to maintain innocence and fail to meet the Board's standard of candor or admit the charge, though it may not be true, and relieve the Board of its burden of proof in the bar admission proceedings. Accordingly, we hold that this particular finding cannot serve as an individually sufficient basis for disqualification and write to explain the inappropriateness of this kind of charge for the benefit of the Board and future applicants.
In Florida Board of Bar Examiners re M.C.A., 650 So.2d 34 (Fla.1995), we faced a similar situation and refused to uphold such a finding. In that case, M.C.A. was accused of cheating on a law school exam. After an investigation by the dean which concluded that she had cheated, M.C.A. and the school entered into a settlement agreement which provided that she receive a failing grade for the class and be suspended for two semesters, but could reapply. The agreement also stated that M.C.A. did not admit wrongdoing and the school neither admitted liability nor conceded the merit of any claims. M.C.A. disclosed this incident and the settlement agreement on her bar application but maintained her innocence. Id. at 34-35.
This Court upheld the Board's finding that M.C.A. had cheated on the law school exam but held that the Board's finding that she lied on her bar application and in her testimony before the Board when she denied cheating had not been proven. Id. at 35. In so holding, we noted that "the Board presented M.C.A. with the ultimate Catch-22: by maintaining her innocence, [she could] never meet the Board's standard of candor," and ultimately found that her continued denial was consistent with the settlement agreement and there was "no record evidence that M.C.A. lied or was less than candid to the Board." Id.
Somewhat similarly, in Florida Board of Bar Examiners re L.K.D., 397 So.2d 673 (Fla.1981), L.K.D. was charged with but acquitted of shoplifting. The Board found that she had, in fact, committed shoplifting and had lied in her bar application and at an informal hearing when she denied shoplifting. Id. at 674. The Court concluded that the Board's finding as to the shoplifting incident was "somewhat supported in the record"; however, it found that her continued protestations of innocence "add[ed] nothing at all to her character analysis," and the Board's separate finding that she falsely denied shoplifting lacked "independent significance in evaluating [her] character as it flow[ed], cumulatively, from the Board's conclusion that [she] was in fact guilty of the alleged larceny charges." Id. at 675-76. The Court further stated that her acquittal justified her continued protestation of innocence, "even though the Board might have thought it advantageous to make a showing of repentance." Id. at 676.
Here, G.J.G. has been placed in the same "ultimate catch-22" as M.C.A.either admit wrongdoing and relieve the Board of its burden of proof, regardless of the truth of the allegation, or deny it and, if the Board finds the allegation true, have the Board also conclude he is lying. We find, as in L.K.D., that the Board's separate finding that G.J.G. *1381 falsely denied cheating lacks independent significance because it is simply the direct result of the Board's finding, in the same proceeding, that he, in fact, cheated.
This case is distinguishable from Florida Board of Bar Examiners re J.C.B., 655 So.2d 79 (Fla.1995). There, the Court upheld the Board's finding that J.C.B. had given false testimony and made false statements on his application for readmission when he denied intentionally committing the acts for which he had been disbarred. As to this finding, the Court stated:
Against the weight of the record, J.C.B. continues to maintain that he was merely "grossly negligent" when he used client's funds for his own use.... But the referee and this Court have found J.C.B.'s behavior that led to his disbarment to be intentional and not the result of negligence.
Id. at 81. Thus, where an applicant is found guilty of and sanctioned for a particular act and the Board's finding and sanction are upheld on review, continued denial of the act in subsequent proceedings does not serve the applicant well and is unacceptable. However, in this case, at the time of G.J.G.'s denial, he had not yet been found guilty of cheating and had not been sanctioned for this conduct. In such a situation, he should be allowed to maintain his innocence and require the charges against him to be proven.
We also find, under the same analysis, that the Board's determination, as charged in Specification 6, that G.J.G. made false statements regarding the aggravated assault incident on his bar application and at the investigative hearing cannot form a separate and independent basis for disqualification. G.J.G. admitted being arrested for aggravated assault on the amendment to his bar application and at the investigative hearing, but maintained that he was innocent, did not damage the alleged victim's truck, and did not ask him to drop the charges. Similar to the acquittal in L.K.D., the dismissal of the charges against him justifies his continued protestation of innocence as to the aggravated assault charge, and he should be allowed to deny this and the other allegations related to this incident and require that they be proven.
Nevertheless we find that even without regard to Specifications 3(A) and 6, the other proven specifications are sufficient to justify the Board's recommendation that G.J.G. not be admitted at this time. Cheating on the bar exam is a particularly egregious act of dishonesty which cannot be easily excused. Further, although the cheating incident occurred more than nine years ago, the record supports the Board's finding of later conduct, including the incident of aggravated assault and subsequent related conduct, which clearly creates "substantial doubts about [G.J.G.'s] honesty, fairness, and respect for the rights of others and for the laws of the state and nation." Florida Bd. of Bar Exam'rs re G.W.L., 364 So.2d 454, 459 (Fla.1978). Accordingly, we uphold the Board's recommendation.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, HARDING, WELLS, ANSTEAD and PARIENTE, JJ., concur.
NOTES
[1] The Board found that this specification had been proven but that the amount paid by G.J.G. to the victim was $400 rather than $500.
[2] Out of 200 answers on the exam, G.J.G. and the suspected source had 109 identical correct answers and 43 identical incorrect answers.