PER CURIAM.
Petitioner M.L.B. asks this Court to review the recommendations of the Florida Board of Bar Examiners. We have jurisdiction. Art. V, § 15, Fla. Const. We decline to order M.L.B.’s admission to the bar at this time.
Petitioner M.L.B. was initially denied admission to The Florida Bar in 1997. The denial was based upon the Board’s findings that (1) just before entering law *996 school, M.L.B. assisted another person in stealing a large number of compact discs from M.L.B.’s employer and ultimately pled no contest to third-degree grand theft; (2) that M.L.B.’s explanation of this incident on his application for admission to the bar was false, misleading, and lacking in candor because he denied doing anything illegal and stated that his plea was a plea of convenience; and (3) that his testimony before the Board at the investigative hearing was also false because he again denied doing anything illegal.[1]
M.L.B. filed a new application on June 3, 1998, and on January 23, 1999, a formal rehabilitation hearing was held. On April 15, 1999, the Board issued its recommendation that M.L.B. again be denied admission. In its recommendation the Board found that M.L.B. had failed to provide clear and convincing evidence of several of the elements of rehabilitation specified in Rule 3-13 of the Rules of the Supreme Court Relating to Admissions to the Bar: (1) “unimpeachable character and moral standing in the community”; (2) “personal assurances, supported by corroborating evidence, of a desire and intention to conduct one’s self in an exemplary fashion in the future”; and (3) “positive action showing rehabilitation by such things as a person’s occupation, religion, or community or civic service.” M.L.B. now seeks review of the Board’s recommendation.
An applicant who has been denied admission to The Florida Bar bears the burden of proving rehabilitation by clear and convincing evidence. See Fla. Bar Admiss. R. 3-13. In determining whether M.L.B. has shown sufficient rehabilitation, “[t]he nature and seriousness of the offense are to be weighed against the evidence of rehabilitation.” Florida Bd. of Bar Exam’rs re D.M.J., 586 So.2d 1049, 1050 (Fla.1991). Further, in making this determination, this Court may review the factual underpinnings of the Board’s recommendation by conducting an independent review of the record. See Florida Bd. of Bar Exam’rs re J.C.B., 655 So.2d 79, 80-81 (Fla.1995); Florida Bd. of Bar Exam’rs re R.D.I., 581 So.2d 27, 29 (Fla. 1991).
Here, the Board previously found M.L.B. guilty of serious misconduct. Whether M.L.B. ever acknowledges the record facts within which we must evaluate the propriety of his admission to the bar, he stands convicted of conduct amounting to a violation of trust placed with him by his employer. The theft from his employer occurred just days before he embarked upon his legal education, and the video tape of the actual event was reviewed by the Board.
Due to the gravity of his misconduct, M.L.B.’s burden at the rehabilitation hearing was a heavy one. Most assuredly, reformation and rehabilitation are essential elements of one’s present character and fitness to occupy a position of trust and confidence as a counselor to Florida citizens. However, one having gone so far astray as to engage in serious criminal conduct and breach of trust just days before entering law school and having thereafter demonstrated a further lack of candor must demonstrate behavior and character of the highest level subsequent to the disqualifying conduct in order to clearly and convincingly establish that admission is proper to a profession that requires its members to be absolutely above and beyond suspicion. After consideration, we agree with the Board’s conclusion that M.L.B. failed to prove rehabilitation by clear and convincing evidence and approve its recommendation that he not be admitted to the bar at this time.

A. Unimpeachable character and moral standing in the community.

As to this element of rehabilitation, M.L.B. submitted ten letters and two affidavits from individuals recommending his admission to the bar. Review of these letters and affidavits reveals that, while *997 some demonstrate knowledge that M.L.B. was previously denied admission, a majority of them do not demonstrate knowledge of the underlying misconduct and criminal behavior. It is important for those attesting to an applicant’s moral character to be aware of his or her past misconduct, and recommendations from those who are unaware of it may be given less weight. See Florida Bd. of Bar Exam’rs re J.C.B., 655 So.2d 79, 82 (Fla.l995)(noting concern that “most of [the applicant’s] character witnesses did not know why he was disbarred”). When one makes recommendations for an individual’s admission into a profession that demands the highest levels of trust and confidence, it is exceedingly important that the recommendation be viewed only through the scope of knowledge of facts upon which it has been based. Mere knowledge that one has been previously refused admission is far different than knowledge that past criminal conduct was the reason for the denial. Accordingly, the Board correctly discounted the weight given to many of M.L.B.’s letters of recommendation.
M.L.B. also argues that there is other evidence in the record of his character and reputation in the community. However, while his participation in city and neighborhood activities, his reputation for working with children, and his good reputation in law school may reflect favorably upon M.L.B., it was reasonable for the Board to conclude that these items were not clear and convincing evidence of his “unimpeachable moral character and reputation in the community.”

B. Personal assurances, supported by corroborating evidence, of a desire and intention to conduct one’s self in an exemplary fashion in the future.

As to this element, the Board found that M.L.B. displayed a pattern of untruthfulness as shown by the two original “lack of candor” specifications found proven against him[2] in combination with and exacerbated by a misleading answer on his bar exam application and untruthful testimony at the rehabilitation hearing. The Board concluded that this pattern of untruthfulness was strong evidence outweighing his personal assurances and any corroborating evidence of his desire and intention to conduct himself in an exemplary fashion in the future. Words of promise ring hollow where there is no recognition of the wrongfulness of the conduct established by the legal record.
In view qf this Court’s recent decision in Florida Board of Bar Examiners re G.J.G., 709 So.2d 1377 (Fla.1998), M.L.B. argues that it is unfair to allow the Board to rely upon the two original “lack of candor” charges in order to establish a pattern of untruthfulness on M.L.B.’s part. In G.J.G., the applicant had been arrested for aggravated assault, but the charges had been dropped. Additionally, he had been accused of cheating on the bar exam. The Board charged G.J.G. in separate specifications of cheating on the bar exam and of falsely denying the wrongful deceptive conduct. Similarly, the Board charged that G.J.G. had committed aggravated assault and had falsely maintained his innocence of that charge. After a formal hearing, the Board found each separate specification proven and disqualifying for admission to the bar. Id. at 1378-79.
On review, this Court rejected, as individually disqualifying, the Board’s finding that G.J.G. falsely denied cheating on the bar exam and its finding that he falsely maintained his innocence of the assault charge. The Court explained that such charges were inappropriate because they put G.J.G. in the “ultimate catch-22-... either admit wrongdoing and relieve the *998 Board of its burden of proof, regardless of the truth of the allegation, or deny it, and if the Board finds the allegation true, have the Board also conclude he is lying.” Id. at 1380. As to GJ.G.’s denial of the cheating charge, the Court stated that since at the time of his denial he had not yet been found guilty of cheating, he should be permitted to maintain his innocence and require the charges against him to be proven. Id. at 1381. Similarly, as to the aggravated assault charge, the Court stated that the dismissal of the charge “justifie[d] his continued protestation of innocence ... and he should be allowed to deny this and the other allegations related to this incident and require that they be proven.” Id.
We find that G.J.G. is not controlling. At the time of the first formal hearing in this case, the two original “lack of candor” specifications involved and considered by the Board were similar to the charges involved in G.J.G. However, at this stage of the proceedings, the conduct which M.L.B. still denies has already been established. It is this posture within which we must review the record. Accordingly, we find that the Board’s consideration of the charges and finding of a pattern of untruthfulness was not inappropriate, and we agree with the Board that M.L.B. did not meet his burden of proof on this element.

C. Positive action showing rehabilitation by such things as a person’s occupation, religion, or community or civic service.

As recognized by the Board, for a short period of time prior to the rehabilitation hearing, M.L.B. made commendable efforts as to this element of rehabilitation. The question is whether those efforts are sufficient in light of the nature and seriousness of his misconduct. It must be remembered that merely showing that one is now living as and doing those things which one should have done before is not a demonstration of rehabilitation as contemplated by our rules. Applicants attempting to overcome past misconduct must show some extra effort in order to demonstrate rehabilitation sufficient to warrant admission to the bar. See Fla. Bar Ad-miss. R. 3 — 13(g); see also Florida Bd. of Bar Exam’rs re N.W.R., 674 So.2d 729, 731 (Fla.1996).
Here, the record shows that for a short period of time, M.L.B. served as a guardian ad litem for five children in two separate families. However, there is no evidence as to the amount of services provided or the time devoted. As a manner of assisting his employer, M.L.B. worked for the Royal British Legion, a charity for members of the armed forces, and helped another attorney with pro bono work for the Haitian community. These are certainly factors to be considered but are by no means determinative when the relationship to employment is also recognized. The record also shows that he served on the board of directors of his homeowners’ association for two months and participated in several onetime charity and community events.
We agree with the Board that, while commendable, these activities fall short of clearly and convincingly establishing the positive action requirement in light of the nature and seriousness of the disqualifying conduct. As the Board points out, most of M.L.B.’s activities occurred within one year of the rehabilitation hearing, and his work with the Guardian Ad Litem program had been for less than one year.
Further, while we have recognized that activities which benefit the applicant as well as the community are not necessarily unacceptable for purposes of rehabilitation, see Florida Bd. of Bar Exam’rs re P.T.R., 662 So.2d 334, 337-338 (Fla.1995), such activities are certainly not the type of broad-based community or charitable activities which this Court views as strong evidence of positive action showing rehabilitation. The rules contemplate[3] and we *999 wish to encourage positive actions beyond those one would normally do for self benefit, including, but certainly not limited to, working as a guardian ad litem, volunteering on a regular basis with shelters for the homeless or victims of domestic violence, or maintaining substantial involvement in other charitable, community, or educational organizations whose value system, overall mission, and activities are directed to good deeds and humanitarian concerns impacting a broad base of citizens. Accordingly, we agree that M.L.B. has not demonstrated that he has satisfied this element of rehabilitation.
In conclusion, we agree with the Board that M.L.B. did not provide clear and convincing evidence of rehabilitation; therefore, we approve its recommendation that he not be admitted to The Florida Bar at this time.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.

. This Court affirmed the Board’s findings and recommendation by confidential order on April 14, 1997.

. As previously noted, there were three original specifications found proven against M.L.B. The first was that he helped another individual steal merchandise from his employer and pled no contest to third-degree grand theft. The remaining two were (1) that his explanation of this incident on an amendment to his application for admission to the bar was false in that he denied doing anything illegal; and (2) that his testimony at the investigative hearing was false in that he again denied doing anything illegal.

. Rule 3 — 13(g) of the Rules of the Supreme Court Relating to Admissions to the Bar states that the "positive action" element can be shown through "such things as a person’s occupation, religion, or community or civic service."