PER CURIAM.
This case is before the Court on a recommendation of the Florida Board of Bar Examiners that Allan Barry Marks be admitted to The Florida Bar. We have jurisdiction. See art. V, § 15, Fla. Const.
For the reasons expressed below, we disapprove the Board’s finding that the conduct alleged in Specification 2 was not disqualifying and find the conduct was disqualifying, both individually and collectively. Further, we disapprove the Board’s recommendation that Marks be admitted to The Florida Bar and deny Marks’s application for admission.
PROCEDURAL BACKGROUND
The Florida Board of Bar Examiners (Board) filed its Public Report and Recommendation with the Court on March 17, 2006, recommending that Allan Barry Marks be admitted to The Florida Bar. Marks previously resigned from the Bar while disciplinary proceedings were pending against him, and the Court reviews the Board’s report, in accordance with Florida Bar Admission Rule 3-23.7, which provides, in pertinent part:
The Board’s findings, conclusions, and recommendation shall be final if not appealed except in cases involving a favorable recommendation for applicants seeking readmission to the practice of law after having been disbarred or having resigned pending disciplinary proceedings. In those cases, the Board shall file a report containing its recommendation with the Court for final action' by the Court. Admission to The Florida Bar for- those applicants shall occur only by public order of the Court.
Marks was initially admitted to the Bar in 1974. On December 6, 1990, this Court approved the uncontested petition for disciplinary resignation filed by Marks, which became .effective in April 1991. Marks reapplied for admission in March 1995. Following an investigation, the Board filed specifications against Marks. After a hearing on the specifications, the Board, in January 1999, issued its Findings of Fact, Conclusions of Law, and Recommendation. It found that all specifications had been proven and that they were individually and collectively disqualifying. The Board recommended that Marks be denied admission.
In. January 2001, Marks submitted a new application for admission. The Board conducted an updated background investigation and again filed specifications. The public hearing on these specifications was held on November 19, 2004. On March 10, 2005, the Board issued its Findings of Fact, Conclusions of Law, and Recommendation. It found Specification 1 had been proven and was individually disqualifying for admission. Specification 1 detailed the reasons for the Board’s decision to deny admission to Marks in 1999, which included trust account violations, Marks’s resignation in lieu of discipline, and his guilty pleas to felony grand theft charges, as well as his failure to establish rehabilitation.
The Board found Specification 2 had also been proven. Specification 2 detailed that Marks had failed to pay his federal income taxes for tax years 1996, 1997, 1998, and 1999. ■ However, the Board found the conduct alleged in Specification 2 was not disqualifying 'because his late payments of taxes were based upon financial difficulties.
*230 The Board recommended that the admission of Marks be delayed for twelve months from the date of the hearing. At the end of twelve months, if Marks submitted proof that he had complied with the Board’s recommendation that he make additional rehabilitation efforts and continue to work with the Internal Revenue Service (IRS) for payment of his taxes, the Board would recommend his admission.
On November 2, 2005, Marks submitted Applicant’s Sworn Report to the Board outlining his rehabilitation efforts since the formal hearing on November 19, 2004. In the report, Marks presented his continued involvement with Community Blood Centers of South Florida and Recording for the Blind and Dyslexic (RFB & D), and stated that he had chaired the RFB & D Golf Tournament Committee for the fourth consecutive year and had made progress toward entering into a payment agreement with the IRS. This was followed by the Board’s Public Report and Recommendation recommending that Marks be admitted to The Florida Bar.
FACTUAL BACKGROUND
The facts established by the proven specifications show that Marks resigned from the Bar after it was discovered that he had misappropriated client money from his client trust account. The exact sum he misappropriated, although substantial, remains unknown; Marks estimated he misappropriated approximately $250,000 in twelve to fifteen withdrawals, over a period of one or more years. Marks admitted that he would withdraw money from his trust account for his personal use, would repay some of the money later, would withdraw additional money, and would later repay only some of those amounts, rendering it impossible for him to determine with precision how much he had actually misappropriated without conducting a complete audit. He misappropriated these funds to finance a lifestyle beyond his means — a large house in an exclusive Miami neighborhood, a very expensive car, vacations whenever he wanted a break, and buying anything and everything he wanted.
The Bar began investigating after the attorney representing the seller in a real estate transaction voiced a complaint. Marks, who represented the buyer, was to have forwarded the net proceeds of the sale, $197,102.10, to the seller’s attorney on October 3, 1990. On October 5, 1990, Marks transferred only $97,102.10. When the seller’s attorney contacted him regarding the $100,000 shortage, Marks told him the shortage was a bank error and he would wire transfer the balance to him immediately. Marks sent the attorney a trust account check on October 15, 1990, in the amount of $100,369.42. There were insufficient funds in the account to cover the check.
Following his resignation from the Bar in December 1990, Marks was criminally prosecuted for felony grand theft in the first degree and felony grand theft in the second degree for his trust account defalcations. He pled guilty to the charges in 1992 and was sentenced to four years of probation with special conditions of restitution and 150 hours of community service.
Marks borrowed money from family, friends, and other sources to replace the money he stole from his clients. Then, in January 1997, Marks declared bankruptcy, discharging the debts he still owed to family, friends, and other sources. He discharged a total of $463,900.54 in debts, including a debt of $90,000 for money he borrowed from a trust established by his aunt for the care and maintenance of her severely disabled son, Marks’s cousin.
Marks testified that he has agreed to repay this $90,000 debt only if he is re *231 admitted to the practice of law. He argued it would be financially irresponsible for him to agree to repay this debt without this condition. The record contains an unsigned letter to the Board purportedly from the co-trustees of the family trust, outlining Marks’s agreement to execute a promissory note with the trust upon.his readmission. According to the letter, the note would obligate Marks to make a small lump sum payment immediately and monthly installment payments for the balance over a ten-year period. The record also contains a copy of a signed letter from Marks’s counsel to the trustees offering, on Marks’s behalf, to pay $6000 down and $700 per month for ten years “contingent on. his re-admission to the Bar.” Significantly, this repayment proposal contains no interest payments.
The only evidence concerning any of the other debts discharged by the bankruptcy is Marks’s testimony. He testified that he paid a debt of $671 to Kahn & Gutter, which had been discharged in the bankruptcy. Marks also testified that he had satisfied the $146,000 debt to the IRS for his 1985, 1989, 1990, and 1992 taxes, despite its discharge in the bankruptcy.
These problems with the IRS began years before Marks’s resignation. He failed to pay federal income taxes for 1985, 1989, 1990, 1992, 1993, 1994, and 1995. In November 1996, he owed the IRS over $150,000 in delinquent taxes, penalties, and interest. Marks resolved these issues with the IRS, but learned nothing from these mistakes. He also failed to pay his federal income taxes for 1996, 1997, 1998, and 1999. Marks informed the Board'that he chose to use the money that should have been utilized to pay his taxes to finance his children’s college educations. Based upon this testimony, the Board made the following finding: “Based upon the applicant’s explanation of the extenuating circumstances surrounding his failure to timely pay these taxes, the Board further finds that the conduct described in Specification 2 is not disqualifying for admission to The Bar.”
The tax issues for' 1996 through 1999 remain unresolved. Marks was making payments toward this debt for some time through payroll deduction. Then, according to Marks, he stopped making payments upon the advice of his contact with the IRS. He made two offers of compromise, both of which were rejected by the IRS. According to Marks, the IRS is waiting to see if Marks is readmitted to the Bar before it will agree to a compromise settlement. Currently, Marks is apparently making no payments toward this debt, which he estimated is approximately $140,000.
ANALYSIS
The applicant bears the burden of demonstrating his or her good moral character in the bar admission process. Although the burden of coming forward with evidence may shift, the burden of proof never moves. Fla. Bd. of Bar Exam’rs re H.H.S., 373 So.2d 890, 891-92 (Fla.1979). An applicant who has been denied admission must prove his rehabilitation by clear and convincing evidence. Fla. Bd. of Bar Exam’rs re M.L.B., 766 So.2d 994, 996 (Fla.2000). In determining whether the applicant has shown sufficient rehabilitation, the nature and seriousness of the offense are weighed against the evidence of rehabilitation. Id.
We first examine the nature and seriousness of Marks’s misconduct. Marks was clearly facing disbarment when he opted to resign. The overwhelming majority of cases involving the misuse of client funds have resulted in disbarment. Fla. Bar v. Spear, 887 So.2d 1242, 1247 (Fla.2004) (citing Fla. Bar v. Travis, 765 So.2d 689, 691 *232 (Fla.2000)); see also Fla. Bar v. Vernell, 721 So.2d 705, 709 (Fla.1998); Fla. Bar v. Porter, 684 So.2d 810, 813 (Fla.1996). If his trust account defalcations had not resulted in his disbarment, Marks’s felony convictions for first degree grand theft and second degree grand theft certainly would have. Disbarment is the presumptively appropriate sanction when an attorney is convicted of a felony under applicable law. Fla. Stds. Imposing Law. Sanes. 5.11. The burden is on the attorney to overcome the presumption of disbarment. See Fla. Bar v. Arnold, 767 So.2d 438 (Fla.2000); Fla. Bar v. Grief, 701 So.2d 555, 557 (Fla.1997). His resignation is the equivalent of disbarment.
Thus, the conduct which prompted Marks’s resignation presents a significant obstacle to his readmission. The resignation itself heightens this obstacle. A disciplinary resignation is tantamount to disbarment. Fla. Bar v. Hale, 762 So.2d 515 (Fla.2000). Disbarment alone is disqualifying for admission to the Bar unless an applicant can show clear and convincing evidence of rehabilitation. Fla. Bd. of Bar Exam’rs re Papy, 901 So.2d 870, 872 (Fla.2005). The denial of Marks’s application for readmission in 1999 also heightens the obstacle.
Because the misconduct by Marks prior to his disciplinary resignation was extremely serious, he would have needed to present substantial rehabilitation evidence to gain readmission, even if he had not engaged in further serious misconduct after his resignation. However, after he resigned, when he was required to be living a life beyond reproach to establish his rehabilitation and prove himself worthy of readmission, Marks willfully refused to pay his federal income taxes for several years despite significant income. He offered the feeble excuse that he thought paying for his children’s college educations was more important than complying with the law. Contrary to the Board’s finding, choosing to benefit one’s children above compliance with the law does not constitute “extenuating circumstances.” We disapprove the Board’s finding that Specification 2 was not disqualifying and find instead that it is disqualifying, both individually and collectively. He not only failed to show rehabilitation, but actually demonstrated a failure to correct past misconduct and a continuing course of misconduct.
We next address the evidence of rehabilitation. The essence of true rehabilitation is to first atone for the harm caused by the past misconduct. The victims of that misconduct must be made whole to the extent humanly possible. The evidence on this first critical issue is woefully inadequate. Indeed, the record evidence demonstrates that he stole from his clients; borrowed money from friends, family, and others to replace the money he had stolen; then declared bankruptcy, leaving the friends, family, and others to sustain the loss caused by his extravagant lifestyle. The record is not clear as to which debts discharged in bankruptcy were reaffirmed, if any. Other than the testimony of Marks that he paid a debt of $671 which had been discharged in the bankruptcy and that he satisfied an earlier debt to the IRS, there is nothing in this record to demonstrate meaningful and consistent restitution to those he injured. Under these circumstances, the testimony of the applicant, without any supporting documentation as to the repayment of debts, does not constitute clear and convincing evidence of restitution showing rehabilitation.
The Court is especially troubled by Marks’s conduct toward the secondary victims of his theft. The $90,000 he owes to a family trust which was established to care for the needs of his handicapped cousin is *233 still unpaid and will, apparently, remain unpaid unless and until Marks is readmitted to the Bar. This is an unconscionable attempt by Marks to exert pressure on the Court to ignore the clear duty to the public of this State to protect it from attorneys lacking the requisite character and fitness of our noble profession. We will not be pressured or coerced into ignoring our duty in this regard based upon conditions a former attorney seeks to place on his or her obligations with regard to repayments for the benefit of a disabled person. This actually exacerbates the misconduct we review.
We give no credence to the rationalization that Marks has limited ability to repay this and other debts because he is not a member of the Bar. Marks has a good education and must be reasonably intelligent, having graduated from law school and taken and passed the Florida Bar examination. Numerous individuals with these or lesser qualifications earn comfortable livings and pay their debts without being members of The Florida Bar. Further, Marks is solely responsible for his situation, as he is the one who engaged in the misconduct that led to his resignation.
The Board and Marks attempt to distinguish this case from our decision in Papy, 901 So.2d 870, by pointing to the fact that Marks resigned from the Bar over fifteen years ago, while Papy had only resigned seven years prior to his unsuccessful application for readmission, as if the mere passage of time erodes that level of proof of rehabilitation needed to gain readmission. This is not the case, especially when there has been additional serious misconduct after the resignation.
Marks still owes unpaid federal income taxes, interest, and penalties totaling approximately $140,000 as a result of his having failed to pay his taxes for 1996, 1997, 1998, and 1999. This occurred seven years ago, not fifteen. This was after his resignation, the point in time when, according to Marks, he resolved to reevaluate his life and dedicate “himself to performing those acts and conducting himself in such a manner as would ultimately support his application for readmission and permit him to rejoin a learned and honorable profession.” His attempt to leverage his obligations to- satisfy debts on admission to The Florida Bar even further demonstrates a lack of character and fitness necessary for admission to The Florida Bar.
In Papy this Court denied readmission to a disbarred attorney, stating: “Papy simply has not made adequate progress in rectifying his financial irresponsibility for this Court to even , consider his admission to the Bar at this time.” Id. at 872. “Further, Papy has not engaged in any effort whatsoever to make whole the others who suffered financial consequences as a result of his misconduct.” Id. The same situation exists here and compels the same result.
It is fundamental that an attorney who resigns in the face of disciplinary proceedings must correct the misdeeds of his past before attempting to prove his rehabilitation. Marks has not done that. First, he stole from clients to support his extravagant lifestyle. Then he stole from citizens by failing to pay his taxes. Finally, he basically absconded with money from family members and friends by borrowing from them to pay back the money he stole from his clients and then discharged these debts in bankruptcy. He has not resolved the tax issue or the discharged debts issue, but makes only promises of future conduct. “Words of promise ring hollow where there is no recognition of the wrongfulness of the conduct established by the legal record.” M.L.B., 766 So.2d at 997.
From a reviewing of the record for more information concerning the debts and the *234 reasons for them, it is apparent that Marks is also hostile toward the Board, although he denies it, and he apparently believes the Board has been unreasonable in requiring that he re-take the Bar exam when his scores expired. This negates another important element of a showing of rehabilitation — lack of malice and ill feeling toward those who by duty were compelled to bring about the disciplinary, judicial, administrative, or other proceeding against the applicant. See Fla. Bar Ad-miss. R. 3-13(d). There is a dearth of evidence concerning other rehabilitation efforts as well.
Marks failed to meet his burden of establishing his rehabilitation by clear and convincing evidence. Accordingly, we disapprove the Board’s recommendation and deny Marks’s application for admission to The Florida Bar at this time.
CONCLUSION
We disapprove the Board’s finding that Specification 2 was not disqualifying and find Specification 2 disqualifying, both individually and collectively. We further disapprove the Board’s recommendation that Allan Barry Marks be admitted to The Florida Bar and deny his application for admission at this time.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.