PER CURIAM.
This is a petition to review the recommendation of the Florida Board of Bar Examiners (Board) that R.D.I. not be admitted to The Florida Bar. We have jurisdiction under article V, section 15 of the Florida Constitution and article III, section 4(b) of the Rules of the Supreme Court Relating to Admissions to the Bar.
After holding an initial informal hearing and thereafter a formal hearing, the Board found the following specifications to have been proven:[1]
Specification 1(A): In 1971 petitioner was arrested and fined for possession of marijuana.
Specification 1(C): In February 1980 petitioner was arrested at Logan Airport, Boston, and charged with larceny while in possession of two suitcases containing $232,440 in cash. Petitioner denied ownership of the larger suitcase that contained $220,000. Petitioner’s only identification at the time was a falsified Florida driver’s license with the petitioner’s picture and the name of Thomas Barnes Preston. Petitioner identified himself as Thomas Barnes Preston to the Massachusetts State Police, misrepresenting his place and date of birth and his social security number. The larceny charge was eventually dropped and the seized $220,000 forfeited to the State of Massachusetts. The Board concluded that the forfeited cash was intended for the unlawful purchase of controlled substances or was proceeds of the unlawful sale of controlled substances.
*28 Specification 2: Petitioner’s testimony at an investigative hearing before the Board was “totally unreasonable and unworthy of belief and, therefore, such testimony is false or lacking in candor.”
Petitioner testified that in 1979 he met a Thomas Barnes Preston in a bar in Gainesville, Florida, and agreed to help him purchase a large quantity of gold. Preston requested petitioner to obtain a Florida driver’s license in Preston’s name, move to Boston, rent a house in cash in Preston’s name, and purchase a car in cash in Preston’s name. Petitioner complied with this request[2] and from October 1979 to the 1980 arrest petitioner spent half his time residing in Boston, meeting with Preston on five or six occasions but without conducting any business on his behalf. Throughout this association with Preston, petitioner was not able to contact Preston, having neither his address nor phone number. Petitioner further testified that when he was arrested at Logan Airport, he and Preston were to go to Washington, D.C., to purchase approximately 20,000 grams of gold from a Christopher Reckmeyer. Preston decided not to go and gave petitioner his plane ticket in the Preston name and the $234,440 in cash. After the arrest petitioner spoke with Preston who advised him to seek the release of the seized money, but subsequently advised him not to pursue the matter further. Petitioner never again heard from Preston.
The Board found that Preston never existed, largely influenced by the fact that petitioner could not identify Preston’s whereabouts nor identify any other person who could document Preston’s existence. Petitioner’s testimony was irreconcilable with the circumstances. Petitioner lived under the Preston name for several months yet claimed that, when arrested, the only reason his airline ticket was in Preston’s name was that Preston had given him the ticket when Preston himself had decided not to go to Washington, D.C.
Specification 3(B): Petitioner’s testimony at the investigative hearing was false or lacking in candor concerning Preston’s existence.
Specification 3(C): Petitioner’s testimony that the smaller suitcase, containing $12,440 in cash, was to be his 10% commission for buying the gold was false or lacking in candor. The money represented only 5.65% of the money.
Specification 4: Petitioner submitted a falsified application for, and received, a Florida driver’s license in the Preston name. Petitioner used the falsified license to conceal his true identity from October 1979 to February 1980.
Specification 5: Petitioner gave a false response on his law school application when he answered “no” to a question asking whether he had ever been arrested. The law school withheld the awarding of his law degree from July 1987 to December 1987 when he later disclosed the 1971 and 1980 arrests.
Specification 6: Petitioner falsely stated on his 1984 Internal Revenue Service tax return, Schedule C, that his product or service was “gemcutting.”
Specification 7: Petitioner applied to be an assistant state attorney in Florida and gave a written explanation of the 1980 arrest which was false, misleading, or lacking in candor. The explanation did not fully state that the petitioner was arrested and charged with larceny, was using and had been using the Preston name, and possessed the falsified Florida driver’s license and $232,440 in cash. In subsequent meetings with the investigator for the state attorney’s office petitioner continued to fail to disclose the additional information about the 1980 arrest, despite being given the opportunity to do so. Petitioner’s application for employment was denied based on the facts and circumstances of the 1980 arrest and his lack of candor about the incident.
Specification 8: Petitioner was “consistently deceptive, misleading and false in his representations regarding his relationship with Christopher Reckmeyer, his *29 existence under a false identity, etc.” Petitioner “lived a lie for purposes of engaging in money laundering with Christopher Reckmeyer and others in the late 1970s and early 1980s.” He “conducted only cash transactions, maintained no records as to the origin of the cash nor any records of purchasers of alleged jewelry, carpets or gold and deliberately deceived the federal grand jury_” He made deliberately misleading representations to the Massachusetts State Police, the federal grand jury, the state attorney’s office, and the Board.
Petitioner raised several defenses to the Board’s charges, including youth,[3] rehabilitation, and the assertion that even if the specifications were proven they would not preclude a favorable recommendation by the Board. The Board rejected these defenses. In its “Conclusions of Law,” the Board determined that the petitioner had “failed to meet the standards of conduct and fitness required” to be admitted to The Florida Bar.
Before this Court the petitioner asserts that the Board’s findings are not supported by competent, substantial evidence. In Florida we require that a bar applicant produce “satisfactory evidence to the Board of good moral character_” Fla. Sup.Ct. Bar Admiss. Rule, art. Ill, § 2.[4] Therefore, it is the applicant’s burden to satisfy the Board of his or her moral standing. Coleman v. Watts, 81 So.2d 650 (Fla.1955). However, once the applicant has made a prima facie showing,
“it is incumbent upon those making objections to offer evidence to support the same and to overcome the prima facie showing made by the applicant. It is not for the applicant to prove the falsity of the charges made against him.” While the burden of proof never shifts, the burden of proceeding does.
Id. at 655 (quoting State ex rel. Bd. of Bar Examiners v. Poyntz, 152 Or. 592, 52 P.2d 1141, 1142 (1935).
When reviewing a recommendation of the Board, this Court is not precluded from “reviewing the factual underpinnings of its recommendation, based on an independent review of the record developed at the hearings.” Florida Bd. of Bar Examiners Re: L.K.D., 397 So.2d 673, 675 (Fla.1981). Further, in a bar case, as in a civil case, facts may be proven by circumstantial evidence if the inference of the fact preponderates over other inferences. Nielsen v. City of Sarasota, 117 So.2d 731 (Fla.1960); L.K.D., 397 So.2d at 677 (Sundberg, C.J., dissenting). After reviewing the extensive record in this case, we conclude that petitioner has not carried his burden of proving good moral character and that the Board’s findings are supported by competent, substantial evidence.
Important to this holding was petitioner’s testimony in front of a federal grand jury in 1984[5] and before the Board in these proceedings. The 1984 grand jury proceedings resulted in the indictment, conviction, and seventeen-year sentence of Christopher Reckmeyer for a continuing criminal enterprise. The United States attorney who conducted the grand jury investigation questioned petitioner in great detail about his business activities. Petitioner testified that in the late 1970s, while living in Gainesville, he entered into a consignment agreement with Christopher Reckmeyer for petitioner to sell oriental rugs and jewelry. He testified that Reckmeyer had a warehouse in Gainesville from which he supplied petitioner with oriental rugs and jewelry. All the consignments were conducted on a cash-only basis with petitioner picking up the merchandise and then paying Reckmeyer in cash within thirty to ninety days. Reckmeyer was the petitioner’s only supplier of merchandise. The petitioner further testified that he would then sell the rugs and jewelry, also on a cash-only basis.[6] He *30 claims to have simply sold them out of his home to customers that he had met by “hanging out” in bars in Gainesville. The petitioner did not advertise his business. Aside from an occasional first or last name, he had almost no recollection of his customers. His sales receipts did not reflect the customers’ addresses or phone numbers and, at the time of his testimony, he did not know how to contact any of his customers.
During the grand jury testimony the United States Attorney also asked the petitioner whether he had ever been arrested. After consulting with his attorney, he answered “yes” and disclosed the 1971 arrest, but stated that it had been expunged from his record. He also admitted that he had been arrested in Boston for theft of money “in excess of $40,000.” He did not relate any details of the arrest and stated that he believed that arrest had also been expunged. When asked whether he had ever used another name, he invoked the fifth amendment.
The petitioner’s testimony before the Board is reflected in the summary of his testimony contained in the Board's finding under Specification 2. He claimed that when he met Preston he was blinded by the promise of big money in agreeing to Preston’s conditions for the gold purchase.[7]
Aside from petitioner’s own admission that he was arrested in 1980, the Board had documentary evidence of his arrest in Boston, the amount of money he was carrying, and his use of the Florida driver’s license. The Board also was presented with evidence of petitioner’s false answers on his law school application[8] and on his 1984 tax return.
Further, the investigator for the state attorney’s office testified about the petitioner’s employment application and his subsequent meetings with the petitioner. He testified that the petitioner did not disclose much information about the 1980 arrest until the investigator confronted the petitioner with specific facts about the arrest. Only then did the petitioner admit to those facts. The investigator testified that it was his opinion that the petitioner had shown a lack of candor about the 1980 arrest because he found it hard to believe that he could forget so many details of the arrest.
We do not overlook the evidence presented by petitioner at the formal hearing. He introduced the deposition of Christopher Reckmeyer[9] who admitted that he himself had run a marijuana brokerage business in the early 1970s, although he claimed he was not guilty of the “managerial” charges to which he had pled guilty. Reckmeyer claimed that the petitioner was only involved in Reckmeyer’s legitimate rug and gold business. He asserted that his brother was lying when he accused the petitioner of having been involved in Reckmeyer’s drug business.
The petitioner also presented several witnesses who had employed him and who testified to his ability to practice law. A character witness who had known him during the late 1970s could not substantiate the petitioner’s business claims because all she remembered was that the petitioner had told her that he was in the rug business. In fact, petitioner presented no witnesses who could corroborate his business activities during the late 1970s.
We agree with the Board that the evidence was sufficient to support the Board’s findings and to deny the petitioner admission to The Florida Bar.[10] The Board did not have to believe the petitioner’s version of events.[11] From the circumstantial *31 and direct evidence surrounding the petitioner’s business activities, his business associates, his extensive use of a false identity, the 1980 arrest and subsequent deception, the Board could infer that the petitioner was involved in “prior, substantial criminal activity.” The evidence supports the findings of continuing misrepresentation and lack of candor by the petitioner.
We also agree that petitioner has not demonstrated that he is sufficiently rehabilitated so as to become eligible for admission to the bar. In particular, we note that petitioner’s failure to disclose the arrests on his law school application and his lack of disclosure on his employment application each occurred subsequent to the events leading to his arrest in Boston. While of less significance, the discrepancy on his income tax return also was a more recent occurrence.
We agree with the Board that the petitioner has failed to prove the character and fitness required to be admitted to The Florida Bar. Accordingly, we approve the Board’s recommendation that petitioner not be admitted to the practice of law in Florida.
It is so ordered.
SHAW, C.J., and OVERTON, McDonald, barkett, grimes, KOGAN and HARDING, JJ., concur.

. We have summarized the Board’s extensive findings.

. Petitioner also travelled under the Preston name prior to the 1980 arrest.

. Petitioner was twenty-eight when he was arrested in 1980.

. An applicant claiming rehabilitation must produce clear and convincing evidence of such rehabilitation. Fla.Sup.Ct. Bar Admiss. Rule, art. HI, § 4(e).

. Petitioner testified without immunity.

. This practice did change when petitioner opened a storefront business in Atlanta in 1981.

. The petitioner also admitted to the 1971 arrest.

. Petitioner apparently amended his law school application after the employment investigation by the state attorney’s office.

. Reckmeyer was deposed by the petitioner’s attorney and an attorney for the Board.

. We believe that the findings under Specification 3(B) and (C) are largely subsumed in the findings under Specification 2. However, we do not believe that this would change the Board’s recommendation and it does not change our holding.

. The Board also did not have to consider a favorable lie-detector test, taken by the petition *31 er after the formal hearing, as evidence of his truthfulness.