609 So.2d 1302 (1992)
FLORIDA BOARD OF BAR EXAMINERS re R.B.R.
No. 78961.
Supreme Court of Florida.
December 3, 1992.
R.B.R. pro se.
Virginia B. Townes, Chairman, Orlando, and John H. Moore, Executive Director, and Thomas A. Pobjecky, Gen. Counsel, Tallahassee, for respondent.
PER CURIAM.
R.B.R. petitions this Court for review of the recommendation of the Florida Board of Bar Examiners that his application for admission to The Florida Bar be denied. We have jurisdiction under article V, section 15 of the Florida Constitution.
R.B.R. graduated from law school and passed the Florida Bar Examination in 1990. In completing R.B.R.'s background investigation, the Board found several troubling items. The Board prepared specifications and made findings as follows.
Several specifications involved an incident in 1979, when R.B.R. was a student at Southern Methodist University. During spring break, R.B.R. introduced Carl, a drug dealer from SMU, to drug dealers R.B.R. knew from Miami. R.B.R. was indicted on the charge of conspiracy to distribute cocaine. He pled guilty to the reduced charge of using a telephone to facilitate the commission of a felony and received a suspended sentence of imprisonment and three years' probation. This conviction was subsequently set aside under the provisions of the federal Youth Corrections Act. The Board found that this criminal conviction was proven, but due to the length of time that had passed the incident was not disqualifying in and of itself.
The Board also found that the explanation of this incident provided by R.B.R. in his sworn bar application was false, misleading, or lacking in candor. R.B.R. stated that his reaction to the criminal charge was "total disbelief, shock, and confusion," and his entire explanation implied that he was completely innocent of any criminal charges, but pled guilty for the sake of avoiding the expense and uncertainty of a trial. R.B.R. failed to disclose significant facts in his explanation of the charge. He did not disclose that he knew Carl was a drug dealer, that Carl offered to pay him for introducing him to Miami drug dealers, and that he did in fact introduce Carl to drug dealers during their trip to Miami. The explanation also falsely implied that R.B.R. had not engaged in any misconduct. The Board found this lack of candor to be disqualifying for admission to the Bar.
In addition, the Board found that R.B.R. falsified responses on his application for *1303 admission to the University of Miami School of Law. He failed to disclose the disciplinary action taken by SMU in response to his criminal charge. The question on this application asked whether he had ever been "suspended, placed on probation, academically dismissed, or required to withdraw from any college," to which R.B.R. responded in the negative. In fact, initially R.B.R. had not been allowed to return to SMU after his indictment, and when he was allowed to return he had to abide by certain conditions. R.B.R. explained that this disciplinary action had been informal and unofficial, and therefore he believed it did not require disclosure. Because the application specifically asked for information on probation by an academic institution, and because R.B.R.'s "conditional" readmission to SMU was the equivalent of probation, the Board found this specification to be proven.[1] However, the Board determined that this specification was not disqualifying in and of itself.
In addition to the above specifications dealing with R.B.R.'s criminal conviction and subsequent misstatements, the Board found that R.B.R. engaged in improper behavior and irresponsible conduct and exhibited a lack of respect for the law after his placement on probation in July, 1980. This specification involved several separate incidents. First, during 1983-84 R.B.R. wrote three worthless checks, two personal and one business. R.B.R. explained these incidents as bookkeeping errors. Second, R.B.R. committed eight traffic violations between 1981 and 1988. R.B.R. admitted these infractions, but explained that they were due to the fact that he learned to drive in El Salvador, which has no speed limits and no traffic enforcement, and therefore were the result of his ingrained driving habits rather than a disrespect for the law. The Board found that the experience of being sentenced to probation should have been sufficient to impress upon R.B.R. the need to respect the laws of this country and to control his bad driving habits. The Board found R.B.R.'s explanation did not mitigate the seriousness of his repeated disregard for the law. Third, R.B.R. operated a vehicle while impaired, resulting in his arrest in April, 1990. R.B.R. denied this allegation and implied that he was arrested due to his Spanish descent and economic status. The Board heard the live testimony of the arresting officer who conducted the sobriety tests. Having observed the demeanor of both the officer, who was also of Spanish descent, and R.B.R., the Board determined that the officer's testimony was more credible and found this allegation proven. Finally, R.B.R.'s driver's license was suspended due to his refusal to submit to a breathalyzer test after his DUI arrest. The Board found the collective allegations of this specification to be disqualifying.
The Board also found that R.B.R. failed to disclose four traffic violations on his Bar application. R.B.R. admitted these nondisclosures but claimed they were due to inadvertence. Further, the Board found that R.B.R.'s sworn statements regarding his performance on the sobriety tests were false, misleading, or lacking in candor. R.B.R. contended that he performed these tests in a satisfactory manner. Based on the testimony of the arresting officer, the Board found that R.B.R. did not perform these tests adequately. Each of these specifications was found to be disqualifying.
Additional specifications arose out of the worthless check charges. First, the Board *1304 found that R.B.R. failed to amend his St. Thomas Law School application to disclose information regarding the subsequent worthless checks. R.B.R. admitted this failure and explained that he inadvertently neglected to amend the St. Thomas application because he was involved in transferring to UM. Second, the Board found that R.B.R. is financially irresponsible, as evidenced by the worthless checks and by his previous large debt. While an undergraduate student, R.B.R. accumulated over $250,000 in credit obligations which he ultimately discharged in personal bankruptcy after his travel businesses failed. The Board found each of these specifications to have been proven, but not disqualifying in and of themselves. However, the Board concluded that considered in the aggregate or in conjunction with the disqualifying specifications discussed above the independently nondisqualifying specifications are disqualifying as well.
In addition to the above findings, the Board specifically noted an overall lack of candor on R.B.R.'s part during the formal hearing. This inability to be candid was especially evident in statements by R.B.R. regarding his submission to a breathalyzer test after his DUI arrest. In his sworn answer to specifications, R.B.R. stated that he declined to take the test after the police officer refused to show him a certificate indicating that he was qualified to administer it. At the hearing, R.B.R. initially repeated this story, then changed his answer and testified that he attempted to take the test, but could not do it. The Board had the opportunity to view a videotape of this incident, which showed that R.B.R. refused to comply with the officer's instructions and refused to properly inflate the balloon on the breathalyzer machine.
R.B.R.'s lack of candor at the hearing was also evident during his testimony regarding his conspiracy charge. R.B.R. initially denied significant facts regarding his knowledge of Carl and their trip to Miami, then changed his story and admitted these facts after being confronted with a written statement that he had submitted to the federal judge at the time of his sentencing.
Despite R.B.R.'s arguments to the contrary, we conclude that the Board's findings are supported by competent and substantial evidence and that such findings in the aggregate are sufficient to justify non-admission to the Bar. Although R.B.R. presented evidence of his success in law school and letters of recommendation from his probation officer, law professors, and employers, the Board found this evidence to be insufficient to overcome the seriousness of R.B.R.'s misconduct and his continuing lack of candor. We agree. This Court will not tolerate a lack of candor from Bar applicants. The ample evidence of R.B.R.'s past misconduct and lack of veracity establish that R.B.R. fails to meet the standards of conduct and fitness required of Bar applicants. We therefore approve the Board's findings and recommendation and deny R.B.R.'s petition for admission to The Florida Bar.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] In a separate specification it was alleged that R.B.R. failed to disclose on his St. Thomas application the disciplinary action taken by SMU in response to his criminal charge. Unlike the UM application, which specifically asked about probation, the St. Thomas application asked only whether he had "ever been suspended or required to withdraw from any school or college for scholastic or other reasons." The Board accepted R.B.R.'s explanation that SMU's informal discipline did not constitute a suspension or request to withdraw and therefore did not have to be disclosed. Other specifications involved R.B.R.'s failure to disclose any information regarding his criminal indictment and conviction on either his St. Thomas or his UM application. R.B.R. explained that his conviction was vacated under the Youth Corrections Act, and he was therefore legally authorized not to reveal it. The Board accepted this defense and found this specification unproven.