PER CURIAM.
Petitioner asks this Court to review the recommendation of the Florida Board of Bar Examiners that his admission to The Florida Bar be denied. We have jurisdiction. See art. V, § 15, Fla. Const. For the reasons expressed below, we approve the Board’s recommendation that R.L.W. not be admitted at this time. Further, we approve the Board’s recommendation that R.L.W. be disqualified from reapplying for admission for a period of five years.

FACTS

On April 5, 1996, while a student at Saint Louis University School of Law, R.L.W. executed a student registration with the Florida Board of Bar Examiners. On June 2, 1998, R.L.W. converted the registration to an application for admission to The Florida Bar. During the course of the Florida Board of Bar Examiners’ character and fitness investigation, certain items of information reflecting adversely on R.L.W.’s character and fitness were discovered. After an investigative hearing, the Board filed Specifications against R.L.W.
Specification 1(a) alleged that R.L.W. failed to disclose in his Florida Bar application that he had attended Western State University College of Law (“Western State”) during spring 1994. Specification 1(b) alleged that R.L.W. failed to disclose his delinquent and outstanding account at Western State in the amount of $1,700.50.
Specification 2 alleged that in his 1998 supplement to his application to The Florida Bar, R.L.W. continued with the failure to disclose his attendance at and past indebtedness to Western State. The Board noted that R.L.W. failed to disclose this information even though a collection agency was handling R.L.W.’s delinquent account during the nine months prior to the execution of the supplement, and the fact that R.L.W. settled his delinquent account by payment of $1400 to Western State University just two months prior to executing the supplement.
Specification 3 alleged that at the investigative hearing before the Board, R.L.W. falsely testified that his reason for not disclosing his attendance at Western State was that he had no recollection of such attendance at the time he completed the application and supplement, notwithstanding the recurrent and recent contact with the collection agency.
Specification 4 addressed R.L.W.’s 1995 application to Saint Louis University School of Law. Specification 4(a) alleged that R.L.W. falsely stated that he had not attended any other colleges or universities. Specification 4(b) alleged that R.L.W. falsely stated that he had not enrolled for classes previously at any other law school. Specification 4(c) addressed a 1999 letter R.L.W. wrote to Saint Louis University pursuant to a request by the Board, wherein R.L.W. informed the university of his prior admission to Western State. The Board alleged that R.L.W. falsely stated in the letter that (i) he had “quickly” decided to withdraw from the school, when he had actually withdrawn six weeks after commencing classes, and (ii) he failed to recall his prior attendance at Western State. In support of the latter allegation, the Board noted that R.L.W. signed his application to Saint Louis University only thirteen months after withdrawing from Western State.
Specification 5(a) alleged that R.L.W. falsely stated on his 1995 “Application for Registration as a Law Student” with the Committee on Character & Fitness of the Board of Commissioners of the Alabama *921 State Bar that he was single when in fact he was married. In 5(b), the Board alleged that R.L.W. left blank that portion of the application which required the applicant to state the date of marriage and the spouse’s name.
Specification 6 alleged that R.L.W. in his 1995 “Application and Questionnaire for Registration as a Law Student” with the Committee of Bar Examiners of the State Bar of California failed to disclose his prior attendance at Western State by leaving blank that portion of the application requiring disclosure of “Other Law Schools Attended or Other Law Study Completed.”
Specification 7 addressed R.L.W.’s 1997 “Application for Certification of Fitness to Practice Law” with the Supreme Court of Georgia. Specification 7(a) alleged that R.L.W. falsely stated that he had never been divorced, when in fact he was divorced in 1996. Specification 7(b) alleged that R.L.W. failed to disclose that he had submitted an application to The Florida Bar. Specification 7(c) alleged that R.L.W. failed to disclose that he had attended Western State. Specification 7(d) alleged that R.L.W. falsely stated that he had never had an account turned over to a collection agency. Specification 7(e) alleged that R.L.W. further failed to disclose his divorce by falsely stating that he had never been a party to litigation. Specification 7(f) alleged that R.L.W. falsely stated that he had never been charged with a traffic violation, when he had received a speeding ticket in Pomona, California, in 1994. Specification 7(g) alleged that in response to an inquiry from the Georgia Office of Bar Admission, R.L.W. stated that he failed to disclose his attendance at Western State because he “attempted to cancel the enrollment within the first few days,” when in fact he had attended classes at Western State prior to withdrawing.
Specification 8 alleged that in his 1998 Graduate Application for Admission to Suffolk University’s MBA program, R.L.W. failed to disclose his attendance at Western State.
R.L.W. executed a sworn Answer to Specifications in which he admitted the allegations in Specifications 1, 2, 4(a), 4(b), 6, 7(c), 7(d), 7(f), and 8.[1] As to Specifications 3, 4(c)(i) and 7(g) (all relating to R.L.W.’s attendance at Western State), R.L.W. admitted to giving the alleged testimony and statements, but denied that they were lacking in candor. R.L.W. admitted Specification 5 (failing to inform the Alabama Bar that he was married), but stated that he inadvertently checked the “Single” box and then failed to fill in the date of marriage and his spouse’s name. R.L.W. admitted 7(e) (falsely stating to the Georgia Bar that he has never been a party to litigation), but denied that he “continued to conceal” his divorce proceedings. R.L.W. denied Specifications 4(c)(ii) (that he falsely stated he failed to recollect his attendance at Western State in his 1999 letter to Saint Louis University), 7(a) (that in his application to the Georgia Bar he denied ever being divorced), and 7(b) (that he failed to disclose to the Georgia Bar his application for admission to The Florida Bar). Finally, R.L.W. asserted the affirmative defense of rehabilitation.
At the formal hearing, R.L.W. continued to claim that he had forgotten about his attendance at Western State and this was why he failed to disclose his attendance in his application and supplement to the Florida Board of Bar Examiners, to the state bars of Georgia and California, and to Suffolk University and Saint Louis University. The Board rejected R.L.W.’s explana *922 tions. In support of its conclusion, the Board noted that the formal hearing record included (1) a statement of account from Western State showing R.LW. to be indebted $1,700.50 to the university; (2) a “Notice of Action Taken” dated September 13, 1995, informing R.L.W. that he had been rejected for a loan due to “delinquent credit”[2] (R.L.W. testified that he had never received this notice); (3) a record of activity by the collection agency which demonstrated that R.L.W. had phone conversations with the collections agents in October and December, 1997. In these conversations, R.L.W. advised the agents that he disputed the indebtedness and had no intention of paying; (4) R.L.W.’s application to Saint Louis University College of Law which contained the following personal statement: “While the law has always been my passion, apathy and complacency settled in and I deferred actual matriculation until now.”; and (5) R.L.W.’s testimony. The Board ultimately found that R.L.W.’s testimony was unworthy of belief and concluded that Specification 3 (falsely testifying at the investigative hearing that he failed to recall his attendance at Western State) had been proven. In finding this Specification to be proven, the Board concluded that Specification 4(c)(ii) (falsely writing to St. Louis University that he failed to recall his prior attendance at Western State) was proven as well.
In finding Specification 4(c)(i) to be proven (falsely telling Saint Louis University that he had “quickly” decided to withdraw from Western State), the Board noted that at the hearing R.L.W. admitted he attended classes at Western State University for “[t]wo to three weeks.” The Board concluded that R.L.W.’s letter to Saint Louis University stating that he “quickly decided to withdraw” from Western State lacked candor. The Board referenced its findings in Specification 4 when finding that Specification 7(g) (falsely informing the Georgia Bar that he attempted to cancel his enrollment with Western State “within the first few days,”) had been proven. In reaching this finding, the Board further noted that R.L.W. “has repeatedly been untruthful in his prior dealings with others including the Board.” The Board found Specification 5 to be proven, noting that even if R.L.W. was separated at the time of his application to the Alabama Bar, he should have checked either the “Married” or “Separated” box.
In finding Specifications 7(a) and 7(b) to be proven (failing to inform the Georgia Bar that he had been divorced and that he had applied for admission to The Florida Bar), the Board noted that there were discrepancies between the Office of General Counsel’s (“OGC’s”) copy of R.L.W.’s application to the Georgia Bar and the copy of the same application upon which R.L.W. relied. In the OGC copy of the Georgia Bar application, R.L.W. stated that he had never been divorced, and failed to disclose that he had applied for admission to The Florida Bar. On the other hand, the copy of the same application produced by R.L.W. stated that he had been divorced and also listed that he had applied for admission to The Florida Bar. At the hearing, R.L.W. testified that the copy of the Georgia Bar application in his possession was a true copy of the original as filed with the Georgia authorities and that he had not revised his copy of the Georgia application. The Board inspected the applications and noted that in the copy of the Georgia Bar application obtained by the Florida Board of Bar Examiners it appeared that the original responses of “Florida 04/96” had been deleted and re *923 placed with “Georgia 11/97” and that an “x” had been deleted from the “yes” response to the question of whether R.L.W. had ever been divorced. The Board concluded that one of two things had happened; either the Georgia Bar itself had altered R.L.W.’s application, or R.L.W. (or someone on his behalf) changed the original application after it had been copied by R.L.W. but prior to it having been forwarded to the Georgia Bar admissions office. The Board concluded that it was “unwilling to assume that someone associated with the Georgia Office of Bar Admission made deletions and additions for no apparent reason to [R.L.W.’s] sworn bar application.” As such, the Board concluded that R.L.W. knowingly offered an altered copy of the true Georgia Bar application in an attempt to deceive the Board, and that he testified untruthfully at his formal hearing when he denied any knowledge that the copy of the Georgia Bar application he presented had been altered.
The Board concluded that R.L.W.’s formal hearing presentation was insufficient to establish the defense of rehabilitation by clear and convincing evidence. R.L.W. presented no witnesses other than himself and no exhibits other than his copy of the application to the Georgia Bar. R.L.W.’s only testimony was that he (1) currently works for General Motors; (2) supports the Christian Children’s Fund; and (3) provides discarded newspapers to a homeless shelter.
In recommending that R.L.W. not be admitted to The Florida Bar, the Board found that the proven allegations of the Specifications were collectively disqualifying. The Board noted that Specifications 4-8 demonstrated R.L.W.’s inability to be truthful during the period of April 1995 through July 1998 and that Specifications 1-3 and R.L.W.’s formal hearing presentation demonstrate his continuing inability to be truthful in his dealings with the Board. Given R.L.W.’s repeated misrepresentations and the egregious conduct of entering a fraudulent exhibit into evidence at his formal hearing, the Board recommended that R.L.W. be disqualified from reapplying for admission for a period of five years as authorized by Florida Bar Admission Rule 3-23.6(d).
R.L.W. seeks review of the Board’s recommendation, challenging "the Board’s findings that the proven Specifications are collectively disqualifying and that R.L.W. knowingly entered an inaccurate document in an attempt to deceive the Board. R.L.W. further challenges the Board’s recommendation that he not be allowed to apply for a period of five years.

ANALYSIS

Challenges to Specifications: Although R.L.W. phrased this issue as whether the Specifications found by the Board are collectively disqualifying, the challenge actually centers upon whether the Board properly found that R.L.W. intentionally failed to disclose information on bar and university applications. R.L.W. testified that his failure to provide this information was due to oversight or inadvertence. However, the Board did not find his testimony to be credible.
This Court has held that the Board’s findings of fact should be approved if they are supported by competent substantial evidence in the record. See, e.g., Florida Bd. of Bar Exam’rs re G.J.G., 709 So.2d 1377, 1379 (Fla.1998); Florida Bd. of Bar Exam’rs re M.C.A., 650 So.2d 34, 35 (Fla.1995). The Court usually defers to the Board’s findings on a witness’s credibility because the Board has had the opportunity to observe the witness during testimony. See Florida Bd. of Bar Exam’rs re C.W.G., 617 So.2d 303, 304 (Fla.1993) (adopting Board’s finding that *924 applicant lacked candor where the “Board observed that [the applicant’s] credibility, during his testimony, was lessened by his demeanor, including the manner in which he answered questions and the time he took to answer them”). The Board correctly asserts that it does not “have to believe [a] petitioner’s version of events.” Florida Bd. of Bar Exam’rs re R.D.I., 581 So.2d 27, 30 (Fla.1991). Further, the Board may find that facts are proven by circumstantial evidence where “the inference of the fact preponderates over other inferences.” Id. at 29.
In the instant case, the Board found a great deal of circumstantial evidence existed to belie R.L.W.’s assertion that his failures to disclose were merely “oversights” or due to inadvertence:
(1) R.L.W. testified that he never received the notice rejecting his loan application for delinquent credit; rather, he learned of the rejection when he called the agency that offered the loan. At the formal hearing, when counsel for the Bar asked R.L.W. if he had ever inquired as to why he had been rejected for the loan, he claimed that he did not. Arguably, anyone curious enough about his or her educational loan application to call the agency for a status update would want to know why it had been rejected.
(2) The Bar submitted documentation that the credit agency representing Western State spoke with R.L.W. on October 28, 1997. Ten days later R.L.W. had his application to the Georgia Bar notarized. This application failed to disclose his attendance at Western State. It is difficult to believe that R.L.W. “forgot” about his attendance at Western State in those ten days. Even if R.L.W. filled out the application before the phone call, he should have filed a supplement to his application. When asked why he waited for a letter from the Georgia Bar requesting specific information regarding Western State before providing this information, R.L.W. testified, “I couldn’t answer that question. I guess I was — I don’t know.”
(3) R.L.W. paid his delinquent debt during the period of March and April, 1998. Approximately three months later, R.L.W. applied to Suffolk University. Yet, he again failed to disclose his attendance at Western State in his graduate application. His only explanation was, “Well, consistent with all of the applications in question here, it just did not register in my mind to list it.”
(4) R.L.W. admitted that his personal statement in his application to Saint Louis University College of Law was totally inaccurate. When a Board member stated, “That message was not true when you wrote it to St. Louis. You had matriculated and started your law school application some time before[,]” R.L.W. responded, “Right. That certainly would be inaccurate.”
(5) R.L.W. testified that he fully intended to mark the “married” box on his application for admission to the Alabama Bar. When asked whether leaving that portion of the application blank which required him to list the date of marriage and name of spouse was consistent with checking the “single” box or the “married” box, R.L.W. testified, “It is I guess consistent with single, but it was just an oversight.”
The above list of inconsistencies between R.L.W.’s actions and his testimony supports the Board’s finding that R.L.W. was not a credible witness and was not testifying truthfully. Therefore, we defer to the Board’s rejection of R.L.W.’s explanations and conclude that R.L.W. on multiple occasions intentionally failed to disclose information to various state bars and universi *925 ties.[3]
The Georgia Bar Application: R.L.W. next challenges the Board’s finding that he knowingly entered an inaccurate document in an attempt to deceive the Board. The Board’s determination that it was R.L.W., and not the Georgia Bar, who changed the application is similarly an issue of witness credibility and circumstantial evidence. The Board could accept or reject R.L.W.’s version of events and elected to reject it. See R.D.I., 581 So.2d at 30. There was no direct evidence as to who altered which document. As such, the Board permissibly relied on the logical and reasonable inference in concluding that R.L.W. made the changes. See generally id. at 29. There is no conceivable reason why the Georgia Bar itself would alter R.L.W.’s sworn application (or why someone would forge a Bar application in R.L.W.’s name). As such, we approve the Board’s conclusion that R.L.W. had made alterations on the application prior to submitting it to the Georgia Bar and then testified falsely as to this fact based upon a false copy presented at the hearing.
The Five-Year Disqualification: This Court has charged the Board of Bar Examiners with “ensuring] that each applicant has met the requirements of the Rules with regard to character and fitness, education and technical competence prior to recommending an applicant for admission.” Fla. Bar Admiss. R. 1-14.2.[4] The rules inform Board members that they should “be just and impartial in recommending the admission of applicants and should exhibit courage, judgment and moral stamina in refusing to recommend applicants who lack adequate general and professional preparation or who lack good moral character.” Fla. Bar Admiss. R. 1-33. In 1993, this Court approved a rule affording the Board the specific discretion to recommend an extended disqualification period where the case involves “material omissions or misrepresentations in the application process.” Fla. Bar Admiss. R. 3-23.6(d).
Under the rules, the Board serves as the body to make the initial determination of an applicant’s fitness for admission to the Bar. This Court has extended discretion to the Board to recommend enhanced restrictions where material omissions or misrepresentations are determined to exist. Such recommendations are rare and we accord respect to the Board when the Board determines that the misrepresentations are so egregious that the circumstances warrant a recommendation of an enhanced disqualification period.
This Court, along with the Florida Board of Bar Examiners, is committed to the proposition that issues of honesty, integrity and character will be fully and fairly analyzed and properly addressed in connection with those who seek to assume a position of trust and confidence through admission to The Florida Bar. Those serving on the Florida Board of Bar Examiners work long hours and provide an essential public service as they strive to ascertain the presence or absence of essential character traits before approving *926 applicants for the privilege of serving Florida citizens as members of The Florida Bar. The task is not easy, but it is essential and fundamental to support a system in which the people of Florida can have trust and confidence. If the Board were to sanction the admission of those who demonstrate a continuing pattern of conduct reflecting a total absence of truth and candor, or merely delay admission for an insignificant time period, the integrity of the entire process itself would be properly subject to question. The Board of Bar Examiners has been and must remain ever vigilant in its activities to serve and protect the people of Florida.
In the past this Court has held that “no qualification for membership in The Florida Bar is more important than truthfulness and candor,” Florida Bd. of Bar Exam’rs re E.R.M., 630 So.2d 1046, 1048 (Fla.1994), and that “[a] lack of candor on the part of an applicant is intolerable and disqualifying for membership in the Bar.” Florida Bd. of Bar Exam’rs re C.A.M., 639 So.2d 612, 613 (Fla.1994); see also Florida Bd. of Bar Exam’rs re R.B.R., 609 So.2d 1302, 1304 (Fla.1992) (“This Court will not tolerate a lack of candor from Bar applicants. The ample evidence of R.B.R.’s past misconduct and lack of veracity establish that R.B.R. fails to meet the standards of conduct and fitness required of Bar applicants .”). The Boat'd has had the firsthand opportunity to hear the evidence and evaluate the suitability of an applicant for entry into the practice of law. Past justices have frequently cautioned against the rejection of Board recommendations of whether to admit an applicant to the practice of law. See generally Florida Bd. of Bar Exam’rs re J.A.S., 658 So.2d 515, 518 (Fla.1995) (Wells, J., Dissenting) (“It is the Board that has had J.A.S. before it in person and has that valuable basis upon which to judge his credibility and his rehabilitation. Since the Board, based upon a thorough investigation and an in-the-flesh hearing, has not found that J.A.S. has overcome the substantial obstacle which he created for himself through past misconduct, I do not believe we have a sound basis to substitute our judgment for the Board’s judgment that J.A.S. has failed to demonstrate at this time that he is worthy of the trust of the public as a lawyer in our state.”); see also Florida Bd. of Bar Exam’rs re P.T.R., 662 So.2d 334, 338 (Fla.1995) (Wells, J., dissenting); Florida Bd. of Bar Exam’rs re S.M.D., 609 So.2d 1309, 1313 (Fla.1992) (Grimes, J., dissenting); Florida Bd. of Bar Exam’rs re D.M.J., 586 So.2d 1049, 1051 (Fla.1991) (Grimes, J., dissenting). We conclude that this Court needs to be equally cautious when rejecting the Board’s recommendation as to an enhanced period of disqualification when presented with the facts established here. The Board has not abused this provision in the past and, as such, caution is particularly important since the Board does not lightly invoke this provision.
The minority view voiced today focuses on what R.L.W. initially failed to disclose and would conclude that this Court has approved less lengthy periods of disqualification. However, this Court should focus not solely on the initial underlying conduct which R.L.W. failed to disclose or misrepresented (domestic litigation, collection agency action, the withdrawal from Western State, a traffic violation, and others), but on R.L.W.’s repeated and multiple failures to disclose that conduct to multiple Bar associations, and his engagement in conduct designed to further hide the truth. See generally Florida Bd. of Bar Exam’rs re J.H.K., 581 So.2d 37, 39 (Fla.1991) (“It is not the fact that petitioner was accused of eight juvenile offenses which disqualifies him for admission to the bar. Not only did he leave them off his application, but *927 also he subsequently gave conflicting accounts concerning the manner in which he responded.... ”). A review of the record below more than demonstrates why the Board determined that an enhanced period of disqualification is required and why it is appropriate. When one of R.L.W.’s misrepresentations surfaced, he did not simply clarify or correct matters. Rather, he attempted to bury it under further falsehoods. This conduct continued into the final hearing and further involved the submission of a false document during the final hearing.
The final defining act in R.L.W.’s lack of candor, and the factor that we feel substantially distinguishes this case from those upon which the minority relies, is R.L.W.’s presentation of an altered document at the disciplinary hearing. R.L.W. could have addressed the misrepresentations on his Georgia Bar application, or he could have denied or explained apparent discrepancies. Instead, he arrived at the hearing with what the finder of fact has determined to be a false copy of the application, which was different from the copy that the Office of General Counsel obtained from the Georgia Bar itself, and R.L.W. continued to assert that the document he presented at the final hearing was the true copy of the application. The Board observed R.L.W.’s deceit firsthand, and even though the Board provided R.L.W. with multiple opportunities to “set the record straight,” R.L.W. continued in the attempt to cover up his misrepresentations with further falsehoods and incredible explanations. There is no credible evidence that the Georgia Bar altered or had any reason to alter the application as R.L.W. would ask us to conclude.
The Court has respectfully considered and analyzed each and every decision upon which the minority relies to reject the recommendation of the Board. However, we conclude that not one of the cases cited in support of rejecting the discretion exercised by the Board here addresses the present facts. None of the cases involves a Board recommendation for the enhanced disqualification, or even any discussion of the applicable rule. None of the cases involves the aggravating factor of the submission of false documents during a final hearing before the Board. Finally, none of the cases involves misrepresentations to the Bar associations of four states.
The conduct demonstrated by R.L.W. here is a perfect example of what one should not do if one wishes to be admitted into the practice of law in Florida. This is a classic example of what should not be done by a future lawyer. Given this Court’s continuing emphasis on the importance of candor and professionalism, and the egregiousness of R.L.W.’s misrepresentations in this case, the record below is more than sufficient to justify the Board’s recommendation of an enhanced period of disqualification. Our words requiring integrity, honesty, fairness, respect, and professionalism would ring hollow if we were to close our eyes to the submission of false and altered documents during a formal hearing after an applicant has made multiple misrepresentations in multiple Bar applications. This case must be regarded as more than simply one of the other more mundane circumstances that pass through the application process from time to time supporting basic disqualification for a shorter period of time. As such, we conclude that the a five-year period of disqualification as assessed in the Board’s discretion is justified in the instant case.
CONCLUSION
Accordingly, we approve the Board’s recommendation that R.L.W. be denied admission to the Bar at this time. In light of R.L.W.’s egregious and repeated misrepre *928 sentations, we further approve the Board’s recommendation that R.L.W. not be permitted reapply for admission for a period of five years.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, and LEWIS, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion, in which PARIENTE and QUINCE, JJ., concur.

. The Board found that these Specifications were proven.

. Given the time frame, it appears that R.L.W. applied for this loan for purposes of funding his legal education at the Saint Louis University College of Law.

. We do not discuss Specifications 4(c)(1) and 7(g) in this opinion because we conclude that the remainder of the Specifications are sufficient to disqualify R.L.W. from admission to the Bar.

. Under the Florida Bar Admission Rules, “[a]ll applicants seeking admission to The Florida Bar shall produce satisfactory evidence of good moral character ... and proof that the applicant is otherwise fit to take the oath and perform the obligations and responsibilities of an attorney.” Fla. Bar Admiss. R. 2-12.