PER CURIAM.
This case is before the Court on M.B.S.’s motion for rehearing of this Court’s order denying him admission to The Florida Bar. We have jurisdiction. See art. V, § 15, Fla. Const. For the reasons expressed below, we reaffirm our previous decision to deny M.B.S. admission to The Florida Bar.
Procedural Background
M.B.S. submitted an application for admission to the Bar in March 2003. During the investigation into M.B.S.’s background, information was discovered that reflected adversely upon his character and fitness. After an investigative hearing before the Florida Board of Bar Examiners (Board) in September 2004, the Board served four specifications on M.B.S.
Specification 1 alleged M.B.S. had engaged in “illegal, irresponsible, or improper behavior” and had “demonstrated a lack of respect for the law and/or the rights of others.” The specification detailed nine instances of various conduct by M.B.S. from January 1990 through March 2002 for which he was arrested, charged, or sentenced for various criminal offenses.
In January 1990, M.B.S. was charged with the unauthorized use or possession of a Florida driver’s license after he used a false driver’s license to gain entry to a nightclub.
In November 1990, M.B.S. was charged with possession of cannabis and possession of drug paraphernalia after he was seen sharing a marijuana cigarette with friends in a parked car. M.B.S. entered a no contest plea on the marijuana charge and adjudication was withheld. The drug paraphernalia charge was dismissed. That same month, M.B.S. tried to sell two tablets of Valium to an undercover police officer in a bar. M.B.S. pled guilty, adjudication was withheld, and M.B.S. was placed on probation for two years, ordered to pay $700 in costs within two months, and ordered to perform twenty-five hours of community service.
*506 In January 1992, M.B.S. and a friend misappropriated a briefcase. M.B.S. attempted to use a credit card from the briefcase to purchase gold, but ran away when he was asked for identification. He used a different credit card, also from the briefcase, to purchase over $1100 worth of gold from another store, signing the card owner’s name to the receipt. He later attempted to purchase another $1200 worth of gold from the same store, but was arrested after the salesperson called the police. He was charged with two counts of fraudulent use of a credit card, two counts of forgery of a credit card receipt, and three counts of grand theft. He pled guilty to two counts of fraudulent use of a credit card, one count of uttering a forged instrument, two counts of grand theft in the third degree, and one count of forgery. Adjudication was withheld. M.B.S. was sentenced to three years of probation and required to make restitution, to continue in therapy, and to pay $720 in court costs. The theft led to the revocation of M.B.S.’s probation on the illegal delivery of a controlled substance sentence. He was placed on three years’ probation, to run concurrently with the probation for theft of the briefcase.
In November 1994, M.B.S. was arrested and charged with disorderly conduct, resisting or obstructing a police officer, and obstruction by a disguised person. He pled no contest to the charges of disorderly conduct and resisting or obstructing an officer without violence. Adjudication was withheld.
In May 1997, M.B.S. was escorted from a nightclub and told, to leave the premises after he caused a fight. When he refused to leave, he was arrested and charged with trespassing. He pled no contest. Adjudication was withheld.
In March 2001, M.B.S. was arrested for driving over 100 miles per hour in a 55-mile-per-hour zone and swerving around other cars from lane to lane. He was charged with reckless driving. He was found guilty and sentenced to pay $785.25 in fines and court costs and to complete fifty hours of community service.
In March 2002, M.B.S. became involved in a fight in a nightclub. Police officers were forced to use mace to subdue him. He was arrested and charged with disorderly conduct.
Specification 2 alleged M.B.S. submitted false information on his law school application. He falsely claimed that his college attendance had not been interrupted for any reason when it had been interrupted at least twice. He stated he was a campaign advisor and event organizer for “quite a few well-known Congressman [sic], Governors as well as local representatives” for the Vermont Republican Party in the early 1990s, which was totally false. He claimed he had performed volunteer work, helping “at-risk” youth and participating in a community-policing project. This information was also a blatant lie. He provided false information about six of the eight prior jobs he listed, inventing some of them. He submitted false information concerning the arrests, charges, and criminal convictions, including failing to update his application when there were new occurrences.
Specification 3 alleged M.B.S. submitted false information to the Florida Supreme Court on an application to participate in a law school practice program by checking the blank in front of the statement: “There is nothing in my background which reflects adversely on my character” and misrepresenting facts for submission to this Court.
Specification 4 alleged M.B.S. submitted false information on his Application for Admission to The Florida Bar. With re *507 gard to his arrest in January 1992 on two counts of fraudulent use of a credit card, two counts of forgery of a credit card, and three counts of grand theft, M.B.S. stated that his roommates stole the credit card and gave it to him and that the card was only used once to purchase $400 worth of merchandise. The truth was that M.B.S. and a friend stole a briefcase. M.B.S. attempted to use a credit card from the briefcase to purchase gold, but ran away when he was asked for identification. He used a different credit card to purchase over $1100 worth of gold from another store, signing the card owner’s name to the receipt. He later tried to purchase another $1200 worth of gold from the same store, but was arrested after the salesperson called the police. He ultimately pled guilty to two counts of fraudulent use of a credit card, one count of uttering a forged instrument, two counts of grand theft in the third degree, and one count of forgery.
M.B.S. also denied ever serving time in jail, which was untrue. He served three months in jail after his probation on a charge of delivery of a controlled substance sentence was revoked. M.B.S. also failed to disclose that he was intoxicated at the time of his arrest in 1994.
A formal hearing on the specifications was held on May 20, 2005. The Board found that all of the specifications had been proven and were disqualifying. The Board, however, found that M.B.S. had proven his rehabilitation by clear and convincing evidence. The Board’s entire summary of M.B.S.’s rehabilitation evidence was that it “included character evidence from five witnesses and a total of 62 exhibits.” Based upon these findings and conclusions, the Board recommended that M.B.S. be conditionally admitted to The Florida Bar and serve a three-year probationary period with specified conditions. M.B.S. agreed to these conditions.
Because the Board’s findings concerning M.B.S.’s rehabilitation were conclusory and the initial conduct so clearly disqualifying and egregious, the Court reviewed the entire record. Based upon its review, the Court disapproved the Board’s conclusion that M.B.S. had proven his rehabilitation by clear and convincing evidence and issued an order denying M.B.S.’s application for admission.
M.B.S. moved for rehearing. The Court granted rehearing and directed the parties to “address all facts related to M.B.S.’s involvement in” the various acts of misconduct charged in the specifications and found proven by the Board. M.B.S.’s brief focused on the rehabilitation evidence presented and the recommendation that he be admitted. The Board provided the additional factual detail which the Court had requested on the disqualifying conduct, but also addressed in more detail the rehabilitation evidence upon which it based its recommendation for conditional admission. The Board outlined alcoholism and an obsessive-compulsive disorder (OCD). The Board concluded that M.B.S. exhibited symptoms of OCD and ultimately began self-medicating with alcohol, which led to alcohol dependence.
The record established that M.B.S. began participating in Alcoholics Anonymous (AA) in January 2004 and achieved sobriety on April 12, 2004. He executed a Florida Lawyers Assistance, Inc. contract on August 23, 2004. Hearing testimony established that M.B.S. attended at least one AA meeting per day, sometimes as many as two or three a day. M.B.S. testified that he does not attend so many meetings because he feels the need to drink, but because he wants to help others.
According to the Board, M.B.S. documented an extraordinary amount of community service. The director of special projects and litigation for Legal Aid in *508 Broward County, Florida, Sharon Bouras-sa, testified on M.B.S.’s behalf by telephone. Bourassa has known M.B.S. for two years. M.B.S. performed volunteer work under Bourassa’s supervision. M.B.S. interviewed clients and did research for Bourassa in at least two cases. He also went into the field to make presentations on behalf of Legal Aid. Bourassa testified that if she had an opening, she would hire M.B.S., especially to work with inmates. A paralegal in the same office also testified on M.B.S.’s behalf and testified to M.B.S.’s hard work and caring and considerate attitude in dealing with clients.
A review of the additional argument and information provided by the parties, as well as a re-review of the record, confirms and reinforces the correctness of the Court’s earlier decision to deny M.B.S. admission to The Florida Bar. M.B.S. has a record of criminal conduct and arrests starting when he was eighteen and continuing to March 2002, his third year in law school.[1] Equally disturbing is the evidence of M.B.S.’s egregious lack of honesty and candor on his law school application, on his application to participate in a law school practice program, and on his application for admission to the Bar, all of which were submitted under oath. In addition to lying to conceal or minimize the negative events in his past on these documents, M.B.S. created fictitious jobs, employers, and volunteer activities to improve his chances of being admitted to law school. His sworn testimony at the formal hearing before the Board convinces the Court that M.B.S. has failed to accept full responsibility for his actions, especially his lack of candor, by attempting to transfer some of the blame to his alcoholism, his parents, and the wording of one of the forms upon which he lied.
M.B.S.’s primary source of income at the time of the formal hearing was disability benefits, which he has received for his OCD since 1992. His OCD was in remission with medication at the time of the hearing, yet M.B.S. had not sought paid employment since September 2004. M.B.S. testified that even though he probably should not be receiving disability benefits, he had never disclosed the true facts. M.B.S.’s parents gave him money to supplement his social security disability income. His parents also paid to have his character witnesses flown to the hearing and were paying for his attorney.
Analysis
This Court has held that we will approve the Board’s findings of fact when they are supported by competent, substantial evidence in the record. Fla. Bd. of Bar Exam’rs re John Doe, 770 So.2d 670, 673 (Fla.2000); see also Fla. Bd. of Bar Exam’rs re R.L.W., 793 So.2d 918, 925 (Fla.2001). We also usually defer to findings based on a witness’s credibility, Doe, 770 So.2d at 674, and are cautious in rejecting the Board’s recommendation of whether to admit an applicant. R.L.W., 793 So.2d at 926.
However, we are not precluded from “reviewing the factual underpinnings of its recommendation, based on an independent review of the record developed at the hearings.” Fla. Bd. of Bar Exam’rs re R.D.I., 581 So.2d 27, 29 (Fla.1991) (quoting *509 Fla. Bd. of Bar Exam’rs re L.K.D., 397 So.2d 673, 675 (Fla.1981)); see also Fla. Bd. of Bar Exam’rs re M.L.B., 766 So.2d 994, 996 (Fla.2000) (denying admission to an applicant, noting that most of the applicant’s rehabilitation efforts had occurred within one year of the rehabilitation hearing).
The egregiousness of the disqualifying conduct at issue here, including M.B.S.’s deplorable lack of truthfulness, the minimal rehabilitation in scope and depth, and the lack of any logical relationship between the misconduct and the evidence of rehabilitation compelled the Court to review the factual underpinnings of the Board’s recommendation in this case. Our review raised more than serious doubts as to M.B.S.’s character and fitness; rather than demonstrating, clearly and convincingly, his rehabilitation, it confirmed and reinforced the correctness of the Court’s original decision to deny M.B.S.’s application for admission.
M.B.S.’s conduct, until very recently, has been the antithesis of that which this Court requires for members of our profession to protect the public. He has a demonstrated thirteen-year history of lying (as recently as March 2003), stealing, breaking the law (as recently as March 2002), abusing alcohol (including as recently as April 2004), and violence (three bar fights, the last in March 2002). He has been sober for a little over two years after years of abuse. This may be a good and encouraging start, but is insufficient to provide the Court adequate confidence in his continued sobriety. Any conversion, no matter how sincere and true, needs to be buttressed by a history of good behavior which clearly and convincingly outweighs the past misconduct.
Most disturbing is the shocking lack of honesty and candor M.B.S. exhibited on his law school application to obtain admission, his application to be submitted to this Court to participate in a law school practice program, and his application for admission to the Bar, all of which were submitted under oath. He clearly lied at each step of the process in very significant ways. Truthfulness and candor are the most important qualifications for Bar membership. R.L.W., 793 So.2d at 926. M.B.S. lied in June 1999, when he completed his application for admission to law school, inventing fictitious jobs, employers, and volunteer activities, to improve his chances of admission. When he was asked why he had lied, he said: “I thought that if I had told the truth about all my past history, I wouldn’t have gotten into law school. And I really wanted to go to law school.” He lied again in April 2001, on his application submitted to this Court for participation in a law school practice program, when he swore there was nothing in his background that might reflect adversely on his character. When asked about this lie, M.B.S. said: “I was — I rationalized that question because of the way that it was worded.... Obviously if it had said have you ever been arrested, I would have had to answer differently or I would have been untruthful.” He lied again in March 2003 on his Bar application. He misrepresented or slanted the facts concerning his arrests, particularly the theft of the briefcase. He also denied ever serving time and failed to disclose that he was intoxicated at the time of his arrest in 1994.
The Court is not persuaded that M.B.S.’s alcoholism adequately excuses, explains, or really addresses M.B.S.’s lack of candor and honesty or that there is even a nexus between alcohol and the most significant aspects of his egregious conduct. It is one thing to deny that one has a problem with alcohol or to try to hide one’s consumption. It is another to fabricate jobs, employers, and volunteer activities to *510 improve one’s chances of admission to law school or to blatantly lie to this Court and on the Bar application.
In Doe, 770 So.2d at 675-76, the Court explained: “[T]he requirement of proof of rehabilitation is firm and fixed. This is not a mere pro forma requirement, but one requiring meaningful substance.” Here, as in Doe, we find the proof of rehabilitation presented by the respondent lacks meaningful substance. The conditional admission process is intended to apply to persons who have an established history of conduct related to conditions clearly subject to rehabilitation who can enter a plan for some period of time after admission. Such a course of action can only be considered after rehabilitation has been established; the plan is to continue the process. Further, there must be a clear nexus between the disqualifying conduct and the condition subject to rehabilitation and the future plan. Conditional admission is not intended to replace the need for a clear and convincing record of rehabilitation.
Further, disqualifying conduct extending over a long period of time will require a longer period of rehabilitation to satisfy the Court that the applicant can maintain the high standards of the profession and the professionalism necessary after gaining admission. Finally, the more serious the disqualifying conduct, the greater the burden of proof of rehabilitation. M.L.B., 766 So.2d at 996; Fla. Bd. of Bar Exam’rs re D.M.J., 586 So.2d 1049, 1050 (Fla.1991). An applicant who engages in serious criminal conduct and breach of trust just days before entering law school and who thereafter demonstrates a further lack of candor must demonstrate behavior and character of the highest level subsequent to the disqualifying conduct to clearly and convincingly establish that admission is proper to a profession that requires its members to be absolutely above and beyond suspicion. M.L.B., 766 So.2d at 996; see also Fla. Bd. of Bar Exam’rs re C.A.M., 639 So.2d 612, 614 (Fla.1994); Fla. Bd. of Bar Exam’rs re C.W.G., 617 So.2d 303, 305 (Fla.1993); Fla. Bd. of Bar Exam’rs re R.B.R., 609 So.2d 1302, 1304 (Fla.1992); Fla. Bd. of Bar Exam’rs re J.H.K., 581 So.2d 37, 39 (Fla.1991).
When the nature and quantity of M.B.S.’s egregious behavior over thirteen years is weighed against the two-year period of sobriety and recovery activities and volunteer work shown here, the misconduct still vastly overwhelms and outweighs the rehabilitation. M.B.S.’s rehabilitation evidence will need to be of the highest order over a longer period than has been shown to overcome his past misdeeds.
The nature and timing of M.B.S.’s metamorphosis and rehabilitation are additional reasons for the Court’s caution. M.B.S. exhibited some of the most egregiously disqualifying conduct — lying to gain entry to law school, lying to this Court to be certified to participate in the law school practice program under chapter 11 of the Rules Regulating the Florida Bar, and lying to the Board on his Bar application— very recently. He only began attending AA meetings in January 2004, and only attained sobriety in April 2004. He entered into a contract with FLA, Inc. on August 23, 2004. A few weeks later, in September 2004, he participated in an investigative hearing before the Board. After numerous years of abusing alcohol, breaking the law, and lying, he suggests that he has turned his life around only a few months before investigative and formal hearings before the Board. He claims to have suddenly gained control over his OCD and alcoholism, after years of being totally unable to overcome the problems presented by either. The Court requires *511 more convincing evidence that this is truly a turning point in M.B.S.’s life and not just another deception and deliberate ploy to gain admission. There is no evidence that M.B.S. was even under the influence of alcohol when he perjured himself on multiple occasions.
The sincerity and depth of M.B.S.’s new-found candor and honesty are another concern. His lies on his application to this Court for participation in a law school practice program are a good example. He checked the option that said there was nothing in his background to reflect adversely on his character. The choice he did not check read: “There is something in my background which might reflect adversely on my character.” (Emphasis removed.) M.B.S.’s explanation that he lied because of the way the form was worded is a self-serving rationalization that is diametrically opposed to that level of openness and candor which is a necessary prerequisite for admission to a profession that has honesty as its bedrock.
M.B.S.’s testimony convinces the Court that he has failed to accept full responsibility for his actions, especially his lack of candor, by attempting to transfer some of the blame to his alcoholism, his parents (for enabling him over the years), and the wording of one of the forms upon which he lied. M.B.S. attributed much of his misconduct to what he referred to as “character defects” and testified that some of these defects disappeared when he stopped drinking. Yet, there was nothing to suggest that M.B.S. was intoxicated when he made false statements under oath or that he was unaware of the truth. Such quibbling is inconsistent with a firm conviction that M.B.S. fully comprehends and intends to correct the error of his ways. Yet, he believes he is fit to assume the significant responsibility of serving the people of this state as an attorney.[2]
The fact that M.B.S. was thirty-four years old at the time of the formal hearing before the Board, but was still financially dependent, at least in part, on his parents is further cause for caution. “Merely showing that an individual is now living as and doing those things he or she should have done throughout life, although necessary to prove rehabilitation, does not prove that the individual has undertaken a useful and constructive place in society.” Doe, 770 So.2d at 675 (quoting Fla. Bar Admiss. R. 3-13(g)).
At this point, M.B.S. has failed to demonstrate that he is now living as and doing those things he should have been doing throughout life, much less that he has undertaken a useful and constructive place in society. His primary source of income was disability benefits, which he has received since 1992. His OCD was in remission with medication at the time of the hearing, yet he had not sought paid employment. MJB.S.’s parents gave him money to supplement his income. They also paid to have the character witnesses flown to the hearing and for his attorney.
While it is to be hoped that M.B.S.’s proclaimed turnaround lasts, it is the Court’s obligation to protect the public and the profession by ensuring the fitness of every lawyer admitted to the Bar. Requiring M.B.S. to clearly and convincingly establish a longer record of success before allowing his admission best fulfills that obligation. The process and intent of con *512 ditional admission must not degenerate into a process that simply ushers undesirable candidates into The Florida Bar and foists them upon Florida’s citizens.
Conclusion
With all of the many reasons for caution discussed above, the Court disapproves the Board’s recommendation that M.B.S. be admitted. M.B.S.’s application for admission is denied at this time for the standard period of two years. If and when M.B.S. reapplies for admission, he must satisfy the concerns we express and must present objectively verifiable evidence of his continuing, uninterrupted sobriety during the interim period, as well as other suitable evidence of rehabilitation.
It is so ordered.
LEWIS, C.J., and WELLS, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, J., dissents with an opinion.

. M.B.S. used a false driver’s license to gain entry to a nightclub at eighteen. At nineteen he was charged with possession of marijuana and illegal delivery of a controlled substance. He stole a briefcase and used several of the credit cards inside to purchase or attempt to purchase thousands of dollars worth of gold merchandise. He was involved in several altercations in clubs and bars and had several encounters with law enforcement. He was arrested for reckless driving in March 2001 for swerving around cars and traveling 100 miles per hour in a 55-miles-per-hour zone.

. Another example of M.B.S.’s tenuous grasp of the concept of complete candor is provided by the discrepancies in M.B.S.’s statements concerning his conversion to another faith. He offered two different stories concerning who gave him a rosary and confused significant terms, although he claimed to have studied the materials concerning his new faith thoroughly.